**25-6843**

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

JAMES EDWARD SCOTT III,
Plaintiff-Appellee,

v.

MELISSA MICHELL, et al.,
Defendants-Appellants,

and

RN SHARON, Dismissed per ECF No. 5; et al.,
Defendants.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA,
D.C. No. 3:23-cv-00231-ART-CLB

---

## DEFENDANTS - APPELLANTS' OPENING BRIEF

---

Respectfully submitted by:
AARON D. FORD
Attorney General
CHRIS DAVIS (Nevada Bar No. 6616)
Senior Deputy Attorney General
Office of the Attorney General, State of Nevada
1 State of Nevada Way, Suite 100
Las Vegas, Nevada 89119
(702) 486-9252 (phone)
cwdavis@ag.nv.gov
*Attorneys for Defendant-Appellants*
*Gaylene Fukagawa, Melissa Mitchell,*
*Kellen Prost, Vanessa Timbreza,*
*and Lorenzo Villegas*

# TABLE OF CONTENTS

TABLE OF CONTENTS ...............................................................................ii

TABLE OF AUTHORITIES.........................................................................iv

I. INTRODUCTION.............................................................................. 1

II. JURISDICTIONAL STATEMENT ..................................................3

III. STATEMENT OF THE ISSUES PRESENTED..............................3

IV. STATEMENT OF CASE AND PROCEDURAL HISTORY ............4

V. STANDARD OF REVIEW ...............................................................12

VI. SUMMARY OF ARGUMENT........................................................13

VII. ARGUMENT .................................................................................15

    A. Defendants Are Entitled to Qualified Immunity Under Established Precedent ..........................................................15

    B. Defendants did *NOT* Violate Scott's Eighth Amendment Rights ...............................................................17

        1. Defendant Nurses Were *NOT* Deliberately Indifferent Because They Could Not Have Known that Scott's Fistula Was Not Functioning...................21

        2. Even if Defendant Nurses Had Become Aware that Scott's Fistula Was Not Functioning, these Nurses Did Not Delay Scott's Care.............................26

3. Defendant Nurses Did *NOT* Violate the Eighth Amendment Because They Had No Control Over Scott Receiving a Thrombectomy ............................... 31

4. Scott Cannot Establish an Eighth Amendment Violation Because He Lacks Objective Medical Evidence Establishing Harm ....................................... 32

C. Scott Failed to Meet His Burden of Establishing, Beyond Debate, a Violation of Clearly Established Law ..... 35

VIII. CONCLUSION .............................................................................. 43

STATEMENT OF RELATED CASES .................................................... 44

CERTIFICATE OF COMPLIANCE ....................................................... 44

CERTIFICATE OF SERVICE ............................................................... 45

iii

# TABLE OF AUTHORITIES

## CASES

*Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912 (9th Cir. 2001) .................................................................... 12, 23

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) ................................................ 15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................... 21

*Ball v. LeBlanc*, 792 F.3d 584 (5th Cir. 2015) ........................................ 23

*Balla v. Idaho*, 29 F.4th 1019 (9th Cir. 2022) ......................................... 39

*Baze v. Rees*, 553 U.S. 35 (2008) ............................................................. 19

*Behrens v. Pelletier*, 516 U.S. 299 (1996) .................................................. 3

*Brennan v. Thomas*, 780 Fed. Appx. 813, 2019 WL 3231193 (11th Cir. 2019) ................................................................................... 24

*Broughton v. Cutter Laboratories*, 622 F.2d 458 (9th Cir. 1980) ........... 40

*Bruce v. Ylst*, 351 F.3d 1283 (9th Cir. 2003) .......................................... 20

*Carley v. Aranas*, 103 F.4th 653 (9th Cir. 2024) ......................... 16, 40, 42

*City of Tahlequah, Oklahoma v. Bond*, 595 U.S. 9 (2021) ...................... 16

*Cunningham v. Gates*, 229 F.3d 1271 (9th Cir. 2000) ............................. 35

*Daniels–Hall v. Nat'l Ed. Ass'n*, 629 F.3d 992 (9th Cir.2010) ................. 5

*Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001) ......................... 12, 13

*Edmo v. Corizon, Inc.*, 935 F.3d 757 (9th Cir. 2019) ........................ 38, 40

*Estelle v. Gamble*, 429 U.S. 97 (1976) .............................................. 28, 29

iv

*Farmer v. Brennan*, 511 U.S. 825 (1994) .................. 18, 19, 20, 22, 23, 26

*Felkins v. City of Lakewood*, 774 F.3d 647 (10th Cir. 2014)....................34

*Fierro v. Smith*, Case No. 19-16786, 2022 WL 2437526 (9th Cir. July 5, 2022).................................................................................31

*Fraher v. Mitchell*, 667 Fed. Appx. 628, 2016 WL 3545705 (9th Cir. 2016).................................................................................31

*Gee v. Pacheco*, 627 F.3d 1178 (10th Cir. 2010)....................................34

*Hamby v. Hammond*, 821 F.3d 1085 (9th Cir. 2016) ........... 19, 20, 29, 30

*Holmes v. Shah*, 748 Fed. Appx. 72, 2019 WL 193127 (7th Cir. 2019).................................................................................30

*Hudson v. Palmer*, 468 U.S. 517 (1984).................................................18

*Hunt v. Dental Dep't*, 865 F.2d 198 (9th Cir. 1989)...............................38

*In re Brazier Forest Products, Inc.*, 921 F.2d 221 (9th Cir. 1990)..........13

*Jones v. Williams*, 297 F.3d 930 (9th Cir. 2002)....................................21

*Kayser v. Caspari,* 16 F.3d 280 (8th Cir. 1994) ................................ 33, 34

*Kisela v. Hughes*, 584 U.S. 100 (2018) ............................................ 16, 17

*Leer v. Murphy*, 844 F.2d 628 (9th Cir. 1988)...................... 20, 21, 32, 33

*Lemire v. California Dept. of Corr. & Rehab.*, 726 F.3d 1062 (9th Cir. 2013)......................................................................... 18, 19

*Linschoten v. Gedney*, 9 Fed. Appx. 773, 2001 WL 583110 (9th Cir. 2001).................................................................................34

*Marshall v. Bulanon*, 230 F.3d 1367, 2000 WL 1175653 (9th Cir. 2000).................................................................................25

*Matthews v. Nat'l Football League Mgmt. Council*, 688 F.3d 1107 (9th Cir. 2012) ................................................................................5

*Miller v. Glenn Miller Productions, Inc.*, 454 F.3d 975 (9th Cir. 2006) ........................................................................... 12, 13

*Norbert v. City & Cnty. of San Francisco*, 10 F.4th 918 (9th Cir. 2021) .............................................................................19

*Ocampo v. Corizon, LLC*, Case No. 20-35990, 2022 WL 229093 (9th Cir. Jan. 25, 2022) ...................................................................18

*Parkell v. Danberg*, 833 F.3d 313 (3d Cir. 2016) ...................................25

*Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) ....................... 22, 31, 32

*Plumhoff v. Rickard*, 572 U.S. 765 (2014) ..............................................3

*Proctor v. Sood*, 863 F.3d 563 (7th Cir. 2017) .......................................25

*Reichle v. Howards*, 566 U.S. 658 (2012) .......................................... 15, 16

*Riccardo v. Rausch*, 375 F.3d 521 (7th Cir. 2004) ................................23

*Rivas-Villegas v. Cortesluna*, 595 U.S. 1 (2021) ....................................16

*River City Markets, Inc. v. Fleming Foods West, Inc.*, 960 F.2d 1458 (9th Cir. 1992) ...........................................................13

*Santiago v. Gage*, 859 Fed. Appx. 112, 2021 WL 2395917 (9th Cir. 2021) .............................................................................39

*Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404 (9th Cir. 1985) .......................................................................... 19, 33

*Sim v. Duran*, Case No. 19-17291, 2023 WL 141447 (9th Cir. Jan. 10, 2023) ...............................................................................39

*Simmons v. Monserrate*, 489 Fed. Appx. 404, 2012 WL 4040244
(11th Cir. 2012) ...................................................................... 25

*Steele v. Choi*, 82 F.3d 175 (7th Cir. 1996) ............................................. 25

*Stewart v. Aranas*, 32 F.4th 1192 (9th Cir. 2022) .................................. 35

*Stiltner v. Rhay*, 371 F.2d 420 (9th Cir. 1967)........................................ 20

*Taylor v. List,* 880 F.2d 1040 (9th Cir. 1989)........................................... 22

*Toguchi v. Chung*, 391 F.3d 1051 (9th Cir. 2004)............................... 19, 24

*Wilhelm v. Rotman*, 680 F.3d 1113 (9th Cir. 2012) .................... 33, 37, 38

*Williams v. Wood*, Case No. 06–55052, 223 Fed. App'x 670 (9th
Cir. 2007)........................................................................................ 18

*Zorn v. Linton*, Case No. 25–297, 2026 WL 795469 (U.S. Mar. 23,
2026)......................................................................................... 17, 41

## STATUTES

28 U.S.C. § 1291 ............................................................................ 3

42 U.S.C. § 1983 ..................................................................... 21, 22

## REGULATIONS

NDOC AR 613.02............................................................................ 32

## RULES

9th Cir. R. 32-1 ............................................................................ 44

Fed. R. App. P. 26........................................................................... 3

Fed. R. App. P. 32........................................................................... 44

Fed. R. App. P. 4............................................................................. 3

Fed. R. Evid. 701 ................................................................. 34

## I.  INTRODUCTION

The district court erred by denying the motion for summary judgment, filed by Defendants Gaylene Fukagawa, Melissa Mitchell, Kellen Prost, Vanessa Timbreza, and Lorenzo Villegas because they are entitled to qualified immunity, as nurses or former nurses of the Nevada Department of Corrections (NDOC).  Contrary to the district court's conclusion, these Defendant Nurses did not delay Scott's medical care in any way, much less violate the Eighth Amendment.

Indeed, the district court's conclusion is contradicted by Scott's medical records, as they confirm Scott never missed any of his dialysis treatments, which he required due to his chronic renal failure.  Not only do the medical records establish that no dialysis appointments were missed, they also confirm that within hours of the flow in Scott's fistula (used as a port for dialysis) decreasing, Scott was transported to an outside medical facility.  Due to the quick and decisive action by NDOC medical providers, Scott received a temporary replacement for his fistula within hours, which prevented any delay in dialysis, and Scott's fistula was restored within days.  No medical provider has opined that Scott's care was deficient in any way, much less opine that the care provided was medically unacceptable under the circumstances, required to establish an Eighth Amendment violation.

1

The decision to provide Scott with additional diagnostic tests or forms of treatment, other than that provided, is a classic example of a matter left to the medical judgment of Scott's doctors. At most, Scott and the district court have suggested a difference of opinion, unsupported by any medical evidence, which as a matter of law does not establish deliberate indifference in violation of the Eighth Amendment's prohibition against cruel and unusual punishment.

More importantly, these Defendant Nurses never examined Scott, and had no control over how and when doctors would treat Scott's fistula. These nurses, therefore, lack any personal actual knowledge that Scott's fistula was not functioning, and lacked any ability to alter the treatment provided, which was entirely proper, in any event, and which no medical provider opined was deficient in any way. Rather than deliberate indifference, the medical records establish that Scott's care was both proper and provided without delay.

Accordingly, Defendants did not violate the Eighth Amendment, much less violate a right clearly established beyond debated, necessary to overcome qualified immunity. This Court should therefore reverse the district court's denial of Defendants' motion for summary judgment because Defendants are shielded by qualified immunity.

2

## II.     JURISDICTIONAL STATEMENT

This Court has jurisdiction over Defendants' appeal, pursuant to 28 U.S.C. § 1291, because Defendants' notice of appeal was timely filed on Monday, October 27, 2025 (2-ER-290-92, ECF No. 60). *See* Fed. R. App. P. 4 (the notice of appeal "must be filed with the district court clerk within 30 days after the entry of the judgment or order appealed from"); Fed. R. App. P. 26(a)(1) ("When the period is stated in days" and "the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday"); *see also Plumhoff v. Rickard*, 572 U.S. 765 (2014) (holding an appellate court properly exercises jurisdiction over an appeal of the denial of a motion for summary judgment asserting qualified immunity when it is "beyond serious dispute" that the defendants did not violate the constitution, even though the district court "determine[ed] that there exists a trialable issue of fact"); *Behrens v. Pelletier*, 516 U.S. 299, 312-13 (1996) (holding "an order rejecting the defense of qualified immunity" is a "'final' judgment subject to an immediate appeal," which may be raised "at either the dismissal stage or the summary judgment stage").

## III.    STATEMENT OF THE ISSUES PRESENTED

**A.**     Whether the district court erred by denying Defendants' motion for summary judgment on Plaintiff's claim that the Defendant

3

Nurses violated the Eighth Amendment based on the medical care he received for his fistula used for dialysis, when the objective medical records establish that Plaintiff never missed a dialysis appointment because prison medical providers acted quickly and decisively to transport Plaintiff to outside medical providers, who provided Plaintiff with a temporary replacement for his fistula within hours, which prevented any delay in dialysis, and Plaintiff's fistula was restored within days.

**B.** Whether the district court erred by denying Defendants' motion for summary judgment asserting qualified immunity when Plaintiff failed to allege facts establishing a violation of the Eighth Amendment, much less a violation of clearly established law, beyond debate.

## IV. STATEMENT OF CASE AND PROCEDURAL HISTORY

In 2021, Scott was an offender lawfully incarcerated in the custody of the Nevada Department of Corrections (NDOC) and housed at the Northern Nevada Correctional Center (NNCC). 2-ER-77-79, ECF No. 38-1 at 4-6. Scott suffers from chronic renal failure, requiring Hemodialysis (HD or dialysis), which began on May 5, 2019. Sealed 3-ER-307, 312. Hemodialysis requires minor surgery to allow access to the blood so that the blood may travel through tubes to a dialysis

4

machine where it is cleaned by a special filter. Access is provided in one of the following ways:

- Fistula: an access made by joining an artery and vein in the arm where needles may be inserted to provide access.

- Graft: an access made by using a piece of soft tube to join an artery and vein in the arm where needles may be inserted to provide access.

- Catheter: a soft tube that is placed in a large vein, which can be connected directly to the dialysis tubes without the use of needles.

A fistula should generally be considered the first choice because it generally lasts longer and has fewer problems. Some patients may not be able to receive a fistula because their blood vessels are not strong enough.[1]

Scott was receiving dialysis three days a week on Mondays, Wednesdays and Fridays. Sealed 3-ER-309-12. Scott's access was by means of a right internal jugular catheter (R IJ Cath) because he had

---

[1] *See* https://www.kidney.org/kidney-topics/hemodialysis-access (last accessed March 12, 2026). This Court may take judicial notice of facts which are publicly available and "not subject to reasonable dispute" because they are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Daniels–Hall v. Nat'l Ed. Ass'n*, 629 F.3d 992, 998–999 (9th Cir.2010) (citing Fed. R. Ev. 201); *see also Matthews v. Nat'l Football League Mgmt. Council*, 688 F.3d 1107, 1113 n.5 (9th Cir. 2012) (same).

two failed fistulas in his left arm. Sealed 3-ER-312. In 2019, a new "cimino" "fistula" was placed in his "right upper extremity" (arm). Sealed 3-ER-307, 312, 327. On April 9, 2021, medical records documented that Scott received dialysis using "Vascular Access" through a "fistula," with a "Dialysis Adequacy: Kt./V: 1.56,"[2] and with no notation of any complications. Sealed 3-ER-312. On June 24, 2021, medical records documented that Scott received dialysis using "Vascular Access" through a "fistula," with a "Dialysis Adequacy: Kt./V: 1.75," with no notation of any complications. Sealed 3-ER-311. On July 29, 2021, medical records documented that Scott received dialysis using "Vascular Access" through a "fistula," with a "Dialysis Adequacy: Kt./V: 1.55," with no notation of any complications. Sealed 3-ER-310.

On Friday, August 13, 2021, Scott received his full dialysis with no complications. Sealed 3-ER-319, 323. When Scott was examined later that same day at 7:00 p.m., and despite Scott confirming he was not in any pain, the examination revealed no thrill in the fistula (vibration in the fistula indicating blood flow). Sealed 3-ER-319. As a result, the medical provider—who is not a defendant in this case—recommended Scott be monitored. Sealed 3-ER-319.

---

[2] A minimum, Kt./V: 1.4 – 1.6 should be achieved in each dialysis. *See* https://pmc.ncbi.nlm.nih.gov/articles/PMC7598406/ (last accessed March 12, 2026).

The next day, at 10:00 a.m. on Saturday, August 14, 2021, Scott was examined by the dialysis nurse who recommended that Scott be transported to the emergency department for further evaluation because the thrill in Scott's fistula had significantly decreased. Sealed 3-ER-319, 323. That same day, Scott was transported to the emergency department of the Carson-Tahoe Medical Center for further evaluation. Sealed 3-ER-323.

Scott was admitted and examined at the Medical Center no later than 11:30 am, on August 14, 2021. Sealed 3-ER-324. Upon examination, Scott reported "0/10 pain," but that he believed that his fistula in the upper right extremity was about to cut off. Sealed 3-ER-323. Dr. Jay Landrita examined Scott, who concluded, based on a sonogram of the fistula, that the fistula in the upper right extremity appeared to be completely thrombosed without flow. Sealed 3-ER-326-27. Dr. Landrita, after consultation with Dr. Quigley, ordered a tunnel catheter to be placed in Scott's left anterior chest, as a replacement for Scott's fistula. Sealed 3-ER-327. This procedure took less than one minute, was successful, with no complications, and was ready for immediate use. Sealed 3-ER-328. Scott was "asymptomatic of any symptoms," "hemodynamically stable," and did "not need emergent dialysis at this time." Sealed 3-ER-327. Scott was discharged back to

the facility where he would be able to continue the scheduled dialysis on Monday and follow up with outpatient nephrology.  Sealed 3-ER-327.

On August 16, 2021, Dr. Naughton, an NDOC Doctor, requested approval for Scott to be evaluated for a possible thrombectomy to repair the fistula, which was approved on August 17, 2021.  Sealed 3-ER-321. That same day, Scott was examined by Dr. Kevin Harlow, a surgeon. Dr. Harlow opined that the thrombosis of the fistula was "due to vascular prosthetic devices, implants, and grafts."  Sealed 3-ER-308. Even though Dr. Harlow did not believe the fistula was salvageable, Dr. Harlow recommended a "right upper extremity fistula thrombectomy" to attempt to repair the fistula.  Sealed 3-ER-308.  Even without the fistula in the upper right extremity, dialysis could proceed through the tunnel catheter.  Sealed 3-ER-306.

On August 26, 2021, Dr. Naughton ordered the thrombectomy and possible grafting.  Sealed 3-ER-322.  That same day, medical records documented that Scott received dialysis using "Vascular Access" through the "tunnel catheter," with a "Dialysis Adequacy: Kt./V: 1.88," with no notation of any complications.  Sealed 3-ER-306.

On September 16, 2021, Dr. Harlow performed the thrombectomy, which he classified as "elective" surgery.  Sealed 3-ER-303. The surgery was successful as "the fistula was open and there was no evidence of stenosis" (narrowing of the fistula).  Sealed 3-ER-304.  If for some

8

reason the fistula failed again, Dr. Harlow still had the option of "a proximal AV fistula by connecting the brachial artery to the antecubital vein." Sealed 3-ER-304.

On October 26, 2021, Scott submitted an Informal Level Grievance, alleging that August 13, 2021 was the first time he informed medical staff that his fistula had stopped working and that if he received medical attention in a timely manner then his fistula could have been salvaged, but never provided any evidence of any delay in treatment. 2-ER-222, ECF No. 38-2 at 141. On February 8, 2022, Scott's grievance was denied. 2-ER-222, ECF No. 38-2 at 141.

On March 10, 2022, Scott appealed the denial by submitting a First Level Grievance. 2-ER-222, ECF No. 38-2 at 141. Scott argued that the clot in the fistula was caused by the Johnson & Johnson COVID-19 vaccine, and the delay in treatment was unnecessary, but again never provided any evidence of any delay in treatment. 2-ER-222, ECF No. 38-2 at 141. On March 17, 2022, Scott's First Level Grievance was denied because Scott consented to the vaccine, "Fistula issues are very common and cannot be blamed on one cause," and his grievance was "unfounded at this time." 2-ER-223, ECF No. 38-2 at 142.

On April 4, 2022, Scott appealed the denial by submitting a Second Level Grievance. 2-ER-223, ECF No. 38-2 at 142. On May 6,

2022, Scott's Second Level Grievance was denied. 2-ER-223, ECF No. 38-2 at 142.

On June 1, 2023, Scott submitted a complaint to the district court alleging a violation of the Eighth Amendment based on the delay in medical care for his blocked fistula, among other claims. Contrary to the allegations in his grievance, Scott alleged for the first time that his fistula had clotted on May 1, 2021, not August 13, 2021 as grieved (2-ER-272-73, ECF No. 10 at 20-21; 2-ER-222, ECF No. 38-2 at 141). In addition to not corresponding with the date alleged in the grievance, Scott's medical records establish that he was receiving dialysis through his fistula between April 9, 2021, and July 29, 2021, without concern. ER-310-12, 319, 323. Scott therefore misrepresented, in his complaint, that "his fistula had ceased functioning" and notified Melissa Mitchell, Gaylene Fukagawa, Vanessa Timbreza, Kellen Prost and Lorenzo Villegas Mitchel, all NDOC nurses, on May 1, 2021, of the same. 2-ER-253-55, 274, ECF No. 10 at 2-4, 22.

On November 30, 2023, the district court screened the complaint. 2-ER-277-89, ECF No. 5. The district court allowed an Eighth Amendment claim to proceed against Nurses Mitchell, Fukagawa, Timbreza, Prost, Villegas, and Malloy based on the care Scott received for his fistula.

10

Because Nurses Mitchell, Fukagawa, Timbreza, Prost, and Villegas did not violate the Eighth Amendment, much less violate clearly established law, beyond debate, they moved for summary judgment because they are entitled to qualified immunity. 2-ER-62-241, ECF No. 38. When opposing summary judgment, Scott admitted, under oath, that he did not notice a change in the "thrill" of his "fistula" until "August 13, 2021" (2-ER-53, ECF No. 46 at 6), just as set forth in his grievance and the medical records.

After the motion was fully briefed (2-ER-43-55, ECF Nos. 46, 47 ), however, in a Report & Recommendation filed April 18, 2025, the Magistrate Judge improperly recommended that the motion be denied (1-ER-17-28, ECF No. 48). The Magistrate Judge wrongly ignored Scott's grievance, the medical records, and Scott's own declaration supporting his summary judgment opposition, and relied upon Scott's misrepresentation in his complaint when his fistula stopped working. 1-ER-17-18. Scott's misrepresentation, however, was not only unsupported by any objective medical records, but was also flatly contradicted by the medical records establishing that Scott was receiving dialysis through his fistula through August 13, 2021. Sealed 3-ER-310-12, 319, 323.

Because the Magistrate Judge erred, Defendants objected to the Report & Recommendation on May 2, 2025. 2-ER-34-42, ECF No. 49.

11

After Scott filed his response (2-ER-30-33, ECF No. 50), in an order filed September 26, 2025, the district court erroneously adopted the Report and Recommendation based on the same faulty reasoning relied upon by the Magistrate Judge (1-ER-2-16, ECF No. 51).

Because Defendants are shielded by qualified immunity, as a matter of law, Defendants timely filed a notice of appeal on Monday, October 27, 2025.  2-ER-290-92, ECF No. 60.

## V. STANDARD OF REVIEW

A ruling on a motion for "summary judgment is reviewed *de novo*." *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001). "Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment shall be granted when, viewing the facts in the light most favorable to the nonmoving party, (1) there is no genuine issue of material fact, and (2) the moving party is entitled to summary judgment as a matter of law." *Id.*  In *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001), this Court explained the "party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of fact for trial." *Id.*  To meet this burden when "the nonmoving party has the burden of proof at trial, the moving party need only point out [by argument] that there is an absence of evidence to support the nonmoving party's case." *Id.*; *see also  Miller v.*

12

*Glenn Miller Productions, Inc.*, 454 F.3d 975, 987 (9th Cir. 2006) (same). The moving party need not disprove the other party's case. *Id.*

Once the moving party makes this showing, "the adverse party may not rest upon the mere allegations or denials of the adverse party's pleading but must provide affidavits or other sources of evidence that set forth specific facts showing that there is a genuine issue for trial." *Devereaux*, 263 F.3d at 1076. "Thus, where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* at 988. "To survive a motion for summary judgment, plaintiffs must produce sufficient evidence to establish the existence of every essential element of their case on which they will bear the burden of proof at trial." *River City Markets, Inc. v. Fleming Foods West, Inc.*, 960 F.2d 1458, 1462 (9th Cir. 1992). "If the nonmoving party fails to make such a showing, summary judgment will be granted because 'a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *In re Brazier Forest Products, Inc.*, 921 F.2d 221, 223 (9th Cir. 1990) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

## VI.   SUMMARY OF ARGUMENT

Defendant Nurses are entitled to qualified immunity and therefore the district court improperly denied their motion for summary

13

judgment. Defendants did not violate the Eighth Amendment because, even assuming a dialysis delay could be an Eighth Amendment violation, ***Scott's dialysis was never delayed.*** To the contrary, due to the quick and divisive action of NDOC medical providers, Scott received a temporary replacement for his fistula within hours, which prevented any delay in dialysis. The fistula was then restored within days. More importantly, these Defendant Nurses never examined Scott and had no control over how and when doctors would treat Scott's fistula. These nurses, therefore, lack any personal actual knowledge that Scott's fistula was not functioning, and lacked any ability to alter the treatment provided, which was entirely proper, in any event, and which no medical provider opined was deficient in any way.

Accordingly, Defendants did not violate the Eighth Amendment with respect to the medical care Scott received, much less a clearly established right required to overcome qualified immunity. At most, Scott has asserted a difference of opinion between himself and his medical providers, which as a matter of law does not establish a violation of the Eighth Amendment's prohibition against cruel and unusual punishment. This Court should therefore reverse the district court's denial of Defendants' motion for summary judgment because Defendants are shielded by qualified immunity.

14

## VII.  ARGUMENT

### A.  Defendants Are Entitled to Qualified Immunity Under Established Precedent

Defendants are shielded by qualified immunity.  In *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011), the Supreme Court held "[q]ualified immunity shields . . . state officials from money damages unless a plaintiff . . . show[s] (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."  "When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *Id.* at 743.  In *Reichle v. Howards*, 566 U.S. 658, 664, (2012), the Supreme Court explained to "be clearly established, a right must be sufficiently clear "that every 'reasonable official would have understood that what he is doing violates that right.'"  The "right allegedly violated must be established, not as a broad general proposition,' but in a 'particularized' sense so that the 'contours' of the right are clear to a reasonable official."  *Id.* at 665.  "In other words, existing precedent must have placed the statutory or constitutional question beyond debate."  *Id.* at 664.  "This 'clearly established' standard protects the balance between vindication of constitutional rights and government officials' effective performance of their duties by ensuring that officials

15

can reasonably anticipate when their conduct may give rise to liability for damages." *Id.*

In *Carley v. Aranas*, 103 F.4th 653 (9th Cir. 2024), this Court recognized "the Supreme Court 'has repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality.'" *Id.* at 660–61, quoting *Kisela v. Hughes*, 584 U.S. 100, 104 (2018). "It is not enough that a rule be suggested by then-existing precedent." *City of Tahlequah, Oklahoma v. Bond*, 595 U.S. 9, 12 (2021). "A right is clearly established when it is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021). "This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* "Thus, to show a violation of clearly established law, [plaintiff] must identify a case that put [each defendant] on notice that his specific conduct was unlawful." *Id.* Officers "are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Kisela*, 584 U.S. at 104. "An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Id.* at 105. Accordingly, "existing precedent must

16

have placed the statutory or constitutional question beyond debate." *Id*. at 104.

Recently, in *Zorn v. Linton*, Case No. 25–297, 2026 WL 795469 at *2 (U.S. Mar. 23, 2026) , the Supreme Court reaffirmed that to "find that a right is clearly established," required to overcome qualified, courts "need to identify a case where an officer acting under similar circumstances was held to have violated the Constitution." "The relevant precedent must define the right with a ***high degree of specificity***, so that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id*. (emphasis added). Officials "receive qualified immunity unless they could have 'read' the relevant precedent beforehand and 'known' that it proscribed their specific conduct." *Id*.

This Court should reverse the district court's denial of Defendants' motion for summary judgment because Scott cannot point to evidence that would be admissible at trial establishing a violation of the Eighth Amendment, much less a violation of a clearly established right, beyond debate, required to overcome qualified immunity.

## B. Defendants did <u>*NOT*</u> Violate Scott's Eighth Amendment Rights

Defendants did not violate the Eighth Amendment based on the medical care Scott received. In *Ocampo v. Corizon, LLC*, Case No. 20-

17

35990, 2022 WL 229093, at *1 (9th Cir. Jan. 25, 2022), this Court held to "prevail on an Eighth Amendment claim for inadequate medical care, a plaintiff must show [1] an objective standard, which requires the plaintiff to show a serious medical need, and [2] a subjective standard, which requires a showing of deliberate indifference." To establish the first prong, a plaintiff must show the prisoner "had an ***objectively*** serious medical need." *Lemire v. California Dept. of Corr. & Rehab.*, 726 F.3d 1062, 1082 (9th Cir. 2013) (emphasis added); *see also Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (holding a "prison official violates the Eighth Amendment only when . . . the deprivation [is] objectively sufficiently serious" so the "conditions pos[e] a substantial risk of serious harm"). For a risk to be "objectively" "substantial" under the first prong, an inmate must show more than a risk of serious harm which is merely possible. *See Hudson v. Palmer*, 468 U.S. 517, 526 (1984). To show an objectively substantial risk of serious harm, the inmate must therefore establish "a 'strong likelihood' rather than a 'mere possibility'" of harm. *Williams v. Wood*, Case No. 06–55052, 223 Fed. App'x 670, 671 (9th Cir. 2007) (holding that "speculative and generalized fears of harm . . . do not rise to a sufficiently substantial risk of serious harm"). Accordingly, to establish such an "objectively intolerable risk of harm" (*Farmer*, 511 U.S. at 846), "the risk must be 'sure or very likely to cause serious illness and needless suffering.'"

18

*Baze v. Rees,* 553 U.S. 35, 50 (2008); *see also Norbert v. City & Cnty. of San Francisco*, 10 F.4th 918, 934 (9th Cir. 2021) (same). A medical need is serious when the "failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Lemire*, 726 F.3d at 1081.

Under the second prong, "deliberate indifference" can only be established "if the prison official knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004). "[N]egligence in diagnosing or treating a medical condition" cannot establish "deliberate indifference." *Farmer*, 511 U.S. at 835. The "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. "To show deliberate indifference, the plaintiff 'must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to the plaintiff's health." *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016). A "mere delay [in medical care], without more, is insufficient to state a claim of deliberate medical indifference." *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). An "official's failure to alleviate a significant risk that he should

19

have perceived but did not" does not establish deliberate indifference. *Farmer*, 511 U.S. at 838.

Additionally, "a difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." *Hamby,* 821 F.3d at 1092. This Court has counseled "'wide discretion' [is] necessarily vested in state prison authorities as to the nature and extent of medical treatment of prisoners." *Stiltner v. Rhay*, 371 F.2d 420, 421 (9th Cir. 1967). "[F]ederal courts must remember that the duty to protect inmates' constitutional rights does not confer the power to manage prisons or the capacity to second-guess prison administrators, for which [the courts] are ill-equipped." *Bruce v. Ylst*, 351 F.3d 1283, 1290 (9th Cir. 2003).

Moreover, a "person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that *causes* the deprivation of which the plaintiff complains." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (emphasis in the original). "In order to prevail and recover damages against any of the named prison officials," Scott "must prove (1) that the specific prison official, in acting or failing to act, was deliberately indifferent to the mandates of the eighth amendment and

20

(2) that this indifference was the actual and proximate cause of the deprivation of the inmates' eighth amendment right to be free from cruel and unusual punishment." *Id*. at 634.

### 1. Defendant Nurses Were <u>*NOT*</u> Deliberately Indifferent Because They Could Not Have Known that Scott's Fistula Was Not Functioning

Even assuming Scott suffers from a serious medical need, he failed to establish how Defendant Nurses were deliberately indifferent. Of course, this failure is unsurprising as there is absolutely no evidence that the Defendant Nurses ever examined Scott, and therefore could not have known that Scott suffered from any medical need. Even if they had examined Scott, they could not have known that Scott's fistula was not working until Saturday, August 14, 2021, because the medical records establish that Scott's fistula was working properly from April 9, 2021, through the morning of August 13, 2021, as Scott was receiving his dialysis without complications. Sealed 3-ER-310-12, 319, 323.

In *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009), the Supreme Court ruled that because "vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Similarly in *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002), this Court held "to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation." *See also*

21

*Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir. 1989) (holding "[l]iability under section 1983 arises only upon a showing of personal participation by the defendant").

Defendant Nurses were not deliberately indifferent because Scott failed to establish that any nurse "kn[ew] of and disregard[ed] an excessive risk to [Scott's] health or safety." *Farmer*, 511 U.S. at 837. In fact, Scott does not even allege that Defendants "should have perceived" that Scott suffered from a serious medical condition, which the Supreme Court in *Farmer* held could not establish deliberate indifference. *Id.* at 837–38. Even if Scott reported to the Defendant Nurses that his fistula had clotted and ceased functioning on May 1, 2021, as misrepresented in his complaint (2-ER-253-55, 272-74, ECF No. 10 at 2-4, 20-22), any medical examination would have revealed that his fistula was working properly as he was receiving dialysis thorough his fistula from before April 9, 2021, until the morning of August 12, 2021, without complications. Sealed 3-ER-307, 310-312, 319, 323, 327.

In *Peralta v. Dillard*, 744 F.3d 1087 (9th Cir. 2014), this Court held, *en banc*, that inmate complaints alleging a serious medical need could not provide the awareness required to establish deliberate indifference because such "complaints often allege numerous violations, many of which turn out not be supported by the evidence." Similarly, in *Ball v. LeBlanc*, 792 F.3d 584, 595 (5th Cir. 2015), the Fifth Circuit held

22

that a "prison administrator who has received an administrative remedy request [asserting a risk to an inmate's health] is not necessarily made aware, without factual corroboration, that there is a substantial risk of serious harm" because "[s]eparating the few meritorious complaints from the mountain of frivolous complaints is as difficult work for prison officials as for federal courts." Likewise, in *Riccardo v. Rausch*, 375 F.3d 521, 528 (7th Cir. 2004), the Seventh Circuit held a "prisoner's bare assertion is not enough to make [a prison official] subjectively aware of a risk, if the objective indicators do not substantiate the inmate's assertion" because "[s]ome prisoners are manipulative and cry 'wolf,'" and therefore prison officials "must discriminate between serious risks of harm and feigned or imagined ones."

For this reason, courts have universally held that an inmate's subjective complaints cannot establish actual knowledge of an "objective intolerable risk of serious harm," required by *Farmer*, 511 U.S. at 846, to establish deliberate indifference when the available objective medical records, such as the medical records establishing that Scott's fistula was working without complication in this case, do not support the offenders claim of a serious medical need. *See Arpin*, 261 F.3d at 922 (rejecting an excessive force claim under the Fourth Amendment because plaintiff did not provide "any medical records to support her claim that she

23

suffered injury"); *Brennan v. Thomas*, 780 Fed. Appx. 813, 821, 2019 WL 3231193 (11th Cir. 2019) (holding that even though inmate complained of "chronic pain," there "was no evidence of an objectively serious medical need—according to the available records").

The district court's entire basis for finding that Defendant Nurses actually knew that Scott suffered from a serious medical need was Scott's misrepresentation in his complaint that he allegedly told Defendant Nurses on May 1, 2021, that his fistula had clotted and ceased functioning on May 1, 2021, 1-ER-3, ECF No. 51 at 2. Neither the district court, nor Scott, point to any other personal involvement by the Defendant Nurses with respect to Scott's medical care. *See* 1-ER-2-16, ECF No. 51; 2-ER-53-55, ECF No. 46 at 6-8; 2-ER-252-76, ECF No. 6. As any examination would have revealed, that Scott's fistula was working properly on May 1, 2021, Defendant Nurses could not have been aware that Scott suffered from any serious medical need based on any unsupported claim to the contrary. Accordingly, it is undisputed that Defendant Nurses lacked the requisite subjective actual knowledge to establish deliberate inference. *See Toguchi*, 391 F.3d at 1058-60 (holding the doctor's "conduct [could ]not constitute deliberate indifference" because the doctor was not "subjectively aware that her failure to conduct a differential diagnosis created a 'substantial risk of serious harm'"); *Marshall v. Bulanon*, 230 F.3d 1367, 2000 WL 1175653,

24

at \*1 (9th Cir. 2000) (holding that doctor's care "did not amount to deliberate indifference to his serious medical needs, especially where a subsequent x-ray revealed no abnormalities"); *see also Proctor v. Sood*, 863 F.3d 563, 567–68 (7th Cir. 2017) (holding that medical providers were not deliberately indifferent to inmate's medical condition when tests "were consistently normal"); *Parkell v. Danberg*, 833 F.3d 313, 338 (3d Cir. 2016) (holding that "in light of the normal x-ray results, a factfinder could not reasonably conclude that [a nurse] deliberately ignored risks to [inmate's] health"); *Steele v. Choi*, 82 F.3d 175, 177-79 (7th Cir. 1996) (holding that doctor was not "deliberately indifferent to [prisoner's] medical needs" when the doctor was not "aware of the risks that [the prisoner] faced," despite the prisoner "experiencing among other symptoms projectile vomiting and a severe headache," which should have caused a "competent doctor" to order further tests); *Simmons v. Monserrate*, 489 Fed. Appx. 404, 406, 2012 WL 4040244 (11th Cir. 2012) (holding that prison officials were not deliberately indifferent when they lacked "any subjective knowledge of a risk of harm attributable to the brain mass" because "the medical reports have suggested the opposite").

25

### 2. Even if Defendant Nurses Had Become Aware that Scott's Fistula Was Not Functioning, these Nurses Did Not Delay Scott's Care

Even if these Defendant Nurses had become aware that Scott's fistula was not functioning, which absolutely is not supported by evidence in the record, Scott's care was not delayed, but Scott was promptly and properly treated. In *Farmer*, the Supreme Court held that prison officials "may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Here, even though Scott received dialysis through his fistula on the morning of August 13, 2021, without complication (Sealed 3-ER-319, 323), when an examination revealed at 7:00 p.m. that same day that blood flow in his fistula had significantly decreased, medical providers ordered that Scott's condition be monitored. Sealed 3-ER-319. The next day, at 10:00 a.m. on Saturday, August 14, 2021, Scott was examined by a dialysis nurse, who is not a Defendant in this case, but who recommended that Scott be transported to the emergency department for further evaluation because the thrill in Scott's fistula had significantly decreased. Sealed 3-ER-319, 323. That same day, Scott was transported to the emergency department of the Carson-Tahoe Medical Center for further evaluation. Sealed 3-ER-323.

26

Scott was admitted and examined at the Medical Center no later than 11:30 a.m. on August 14, 2021. The sonogram ordered by Dr. Landrita was the first objective medical evidence that Scott's fistula was without flow. Sealed 3-ER-326-27. Rather than the Defendant Nurses, Dr. Landrita, upon consultation with Dr. Quigly, a nephrologist, is the one who ordered that a tunnel catheter be placed in Scott's left anterior chest, as a replacement for Scott's fistula, rather than an immediate thrombectomy. Sealed 3-ER-326-28. Due to NDOC medical providers' quick and decisive action, Scott was able to continue the scheduled dialysis on Monday, August 16, 2021. Sealed 3-ER-327.

Moreover, on August 16, 2021, Dr. Naughton, an NDOC Doctor, requested approval for Scott to be evaluated for a possible thrombectomy to repair the fistula, which was approved on August 17, 2021. Sealed ER-321. That same day, Scott was examined by Dr. Kevin Harlow, a surgeon. Dr. Harlow opined that the thrombosis of the fistula was "due to vascular prosthetic devices, implants, and grafts," not due to any action by Defendants Nurses. Sealed 3-ER-308. Even though Dr. Harlow did not believe the fistula was salvageable, Dr. Harlow recommended a "right upper extremity fistula thrombectomy" to attempt to repair the fistula. Sealed 3-ER-308. On September 16, 2021, Dr. Harlow performed the thrombectomy, which he classified as "elective" surgery. Sealed 3-ER-303. The surgery was successful as

27

"the fistula was open and there was no evidence of stenosis" (narrowing of the fistula). Sealed 3-ER-304. If for some reason the fistula failed again, Dr. Harlow still had the option of "a proximal AV fistula by connecting the brachial artery to the antecubital vein." Sealed ER-304.

Neither the district court, nor Scott, pointed to any evidence in the record which would establish that the thrombectomy could have been performed any sooner or that Scott would have received a more favorable result, much less that Defendant Nurses were the cause of any delay in Scott receiving a thrombectomy. To the contrary, Dr. Harlow determined that the surgery was successful. Sealed 3-ER-304.

A comparison of the facts in this case with those in *Estelle v. Gamble*, 429 U.S. 97 (1976) shows how far short Scott's claim falls. In *Estelle*, the prisoner alleged that he continued to suffer from debilitating back pain after a bale of cotton fell on him. *Id.* at 99–100. When he sought medical treatment, the medical staff gave him only pain medication and muscle relaxers; they did not even order an X-Ray or other similar diagnostic test to determine what was wrong. *Id.* The Supreme Court held that these allegations failed to state a claim because "the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment." *Id.* at 107.

28

Here, by contrast, NDOC medical providers quickly responded to evidence that Scott's fistula was not properly functioning. In less than 17 hours after a loss of thrill was noted in Scott's fistula, Scott was examined by Medical Center doctors. Even though Medical Center doctors did not recommend a thrombectomy to repair the fistula, NDOC doctors immediately requested approval for Scott to be evaluated for a possible thrombectomy to repair the fistula, which was approved the next day. Sealed 3-ER-321. Due to NDOC doctors' action, the surgeon performed the thrombectomy, classified as "elective" surgery, which was successful. Sealed 3-ER-303-04. Just like in *Estelle*, however, the decision to provide Scott with "additional diagnostic tests or forms of treatment," other than the treatment provided, "is a classic example of a matter for [Scott's doctors'] medical judgment" as a result of those doctors' medical examination. *Id.* at 107.

At best, Scott offers his unsupported difference of opinion that he should have received an immediate thrombectomy, which is insufficient to establish an Eighth Amendment violation. In *Hamby*, this Court expressly held: "Eighth Amendment doctrine makes clear that a difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." 821 F.3d at 1092. Scott, who is not a doctor, only offers his own unsupported lay opinion that

29

Defendant Nurses should have arranged for an immediate thrombectomy, even though no doctor opined that thrombectomy was required, but instead considered the thrombectomy to be elective surgery. As a matter of law, Scott's unsupported lay opinion cannot establish an Eighth Amendment violation, especially without any disagreement by any medical provider that Scott was provided proper care. *See Holmes v. Shah*, 748 Fed. Appx. 72, 74, 2019 WL 193127 (7th Cir. 2019) (holding that while an inmate "may have wanted more treatment than pain killers and an x-ray, his mere disagreement with the course of adequate treatment is not enough to create a triable claim of deliberate indifference").

To prove an Eighth Amendment violation, Scott must put forth evidence establishing that the course of treatment personally chosen by each Defendant Nurse "was medically unacceptable under the circumstances ***and*** that the defendants chose this course in conscious disregard of an excessive risk to the plaintiff's health." *Hamby*, 821 F.3d at 1092 (emphasis added). Scott, however, has not put forth any evidence that any Defendant Nurse had any involvement in choosing a course of treatment, much less that they disregarded any risk to Scott's health. Instead, Scott's medical providers properly chose a course of treatment based on their considered medical judgment. No medical provider has opined that the extensive course of treatment provided to

30

Scott was deficient in any respect. Without such expert testimony, Scott cannot establish an Eighth Amendment violation. *See Sim*, 2023 WL 141447, at *2 (holding a "difference of opinion . . . between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference" when the medical opinions provided in briefing do not meet the "high bar" of establishing the "chosen course of treatment was medically unacceptable under the circumstances"); *Fierro v. Smith*, Case No. 19-16786, 2022 WL 2437526, at *2 (9th Cir. July 5, 2022) (same); *Fraher v. Mitchell*, 667 Fed. Appx. 628, 630, 2016 WL 3545705 (9th Cir. 2016) (same). Accordingly, Scott's Eighth Amendment claim has no merit, and the district court erred when refusing to grant Defendants' motion for summary judgment because they did not violate the Eighth Amendment.

### 3. Defendant Nurses Did *NOT* Violate the Eighth Amendment Because They Had No Control Over Scott Receiving a Thrombectomy

Even if some medical provider had opined that the thrombectomy had been unreasonably delayed, which is absolutely not the case, Defendant Nurses did not violate the Eighth Amendment because they had no control over Scott receiving a thrombectomy. In *Peralta* this Court held, *en banc*, that prison officials could not be held liable for constitutional violation when they had "no control" over the requested resources and therefore the relief requested was "impossible to provide."

31

744 F.3d at 1083-84, 1086-88. This Court concluded that a court cannot impute wrongdoing "to an employee who himself has committed no wrong." *Id.* at 1084.

Scott does not point to any evidence that the Defendant Nurses had any ability to control Scott receiving a thrombectomy. Instead, decisions on how to treat Scott were made by Dr. Landrita and Dr. Quigly initially, neither of whom recommended a thrombectomy. Dr. Naughton, an NDOC doctor, was the first doctor to recommend a thrombectomy. Pursuant to NDOC AR 613.02(2), only a "physician" could request "[o]ut-of-institution diagnostic and therapeutic services." Moreover, Defendant Nurses had no control over when or if Dr. Harlow, the surgeon, performed the thrombectomy. Without any ability to control Scott receiving a thrombectomy, Defendant Nurses could not violate the Eighth Amendment based on any supposed delay in providing the thrombectomy because Defendant Nurses committed no wrong.

### 4. Scott Cannot Establish an Eighth Amendment Violation Because He Lacks Objective Medical Evidence Establishing Harm

Scott cannot establish an Eighth Amendment violation because he fails to point to any objective medical evidence establishing harm as a result of any supposed delay in receiving a thrombectomy. As mandated by *Leer*, McGuire must establish the "requisite causal

32

connection between each individual prison official's actions and the eighth amendment violation." 844 F.2d at 634. The district court erred when denying Defendant Nurses' motion for summary judgment because Scott offered no evidence demonstrating that any delay caused harm, much less that any Defendant Nurse caused any delay or any harm. *Id.*

In *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012), this Court held that to prove an Eighth Amendment violation, the inmate must establish that Defendants' actions "caused" further harm. *See also Shapley,* 766 F.2d at 407 (holding that inmate could not establish a "claim of deliberate medical indifference" unless "the denial [of medical care] was harmful").

Here, Scott fails to point to any objective medical evidence in the record establishing that the actions of the Defendant Nurses were the actual and proximate cause of any harm to Scott. In *Kayser v. Caspari,* 16 F.3d 280, 281 (8th Cir. 1994), the Eighth Circuit held that a prisoner's "bare assertions" could not establish that a prisoner suffered from an ailment when there was no "medical evidence to support' the prisoner's claim that he suffered from this ailment." The court reasoned that the prisoner's "self-diagnosis alone cannot establish that he does, in fact, suffer from [an aliment]" when "the available medical evidence

33

does not support his self-diagnosis." *Id.*; *see also  Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010) (same).

As explained by the Tenth Circuit in *Felkins v. City of Lakewood*, 774 F.3d 647, 651 (10th Cir. 2014), a plaintiff's "lay evidence" concerning her medical condition "is inadmissible in court and thus cannot be used to oppose summary judgment" when the plaintiff "does not claim to be a medical expert."  The court reasoned that "[s]uch lay evidence . . . cannot be 'based on scientific, technical, or other specialized knowledge'," as required by Fed. R. Evid. 701, and therefore is inadmissible for purposes of summary judgment.  *Id.*

Scott cannot fault the Defendant Nurses for any supposed delay over which they had no control, and which did not cause any harm. Dr. Harlow, Scott's surgeon, pronounced the thrombectomy a success and Scott offers no contrary medical evidence.  Without harm, Scott cannot establish that any Defendant Nurse violated the Eighth Amendment with respect to Scott's medical care.  *See Linschoten v. Gedney*, 9 Fed. Appx. 773, 774, 2001 WL 583110, at *1 (9th Cir. 2001) (holding that the "district court properly granted [prison officials'] motion for summary judgment because the inmate "provided no evidence . . . that the delay in receiving medical treatment caused him harm").

## C. Scott Failed to Meet His Burden of Establishing, Beyond Debate, a Violation of Clearly Established Law

Neither Scott, nor the district court, has cited any Supreme Court or circuit authority which squarely governs the specific facts of this case and would, beyond debate, clearly establish a violation of the Eighth Amendment. In *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000), this Court held that resolving dispositive motions "based on qualified immunity" requires conducting an "individualized analysis . . . , examining each of the . . . elements of the alleged" cause of action, when determining whether the law was clearly established. Scott, however, cannot point to any established precedent meeting the subjective prong required to establish an Eighth Amendment violation.

Cases relied upon by the district court do not come close to establishing a violation of clearly established law, beyond debate. For example, in *Stewart v. Aranas*, 32 F.4th 1192, 1194-95 (9th Cir. 2022), prison officials "persist[ed] in a treatment known to be ineffective" "over a period of years and a visibly deteriorating condition." This Court recognized that "[m]ere disagreement with a medical treatment plan is not deliberate indifference," but held "continuation of the same treatment in the face of obvious failure is." *Id.* at 1194.

Neither Scott, nor the district court, point to any failure in treatment, much less failure over a period of years. Scott had no need

35

of treatment until August 12, 2021, because his fistula was working properly as he was receiving dialysis thorough his fistula from before April 9, 2021, until the morning of August 12, 2021, without complications. Sealed 3-ER-307, 310-312, 319, 323, 327. When an examination revealed at 7:00 p.m. that same day that blood flow in his fistula had significantly decreased, medical providers ordered that Scott's condition be monitored. Sealed 3-ER-319. Less than 17 hours after a loss of thrill was noted in Scott's fistula, Scott was examined by Medical Center doctors. Sealed 3-ER-319, 323, 326-27. Rather than Defendant Nurses, Dr. Landrita, upon consultation with Dr. Quigly, a nephrologist, is the one who ordered that a tunnel catheter be placed in Scott's left anterior chest, as a replacement for Scott's fistula, rather than an immediate thrombectomy. Sealed 3-ER-326-28. Due to NDOC medical providers quick and decisive action, Scott was able to continue the scheduled dialysis on Monday, August 16, 2021. Sealed 3-ER-327.

While Defendant Nurses had no control over when or if Dr. Harlow, the surgeon, performed the thrombectomy, Dr. Naughton, an NDOC doctor, recommended a thrombectomy within two 2 days, even though Dr. Landrita and Dr. Quigly did not recommend a thrombectomy and Dr. Harlow had doubts about whether a thrombectomy would be successful. Sealed ER-308, 321, 326-28. Due to NDOC medical providers actions, the thrombectomy was successful as

36

"the fistula was open and there was no evidence of stenosis" (narrowing of the fistula). Sealed 3-ER-304, 321. Rather than a continuation of the same treatment for years in the face of obvious failure, as found in *Stewart*, Scott received treatment within hours which prevented any delay in dialysis, and ultimately restored Scott's fistula. Contrary to the considered medical opinion of all of Scott's medical providers, Scott and the district court offer a mere difference of opinion as to the care Scott should have received which this Court in *Stewart* declared could not establish an Eighth Amendment violation.

*Wilhelm*, relied upon by the district court, equally fails to establish a violation of clearly established law, beyond debate. In *Wilhelm*, the examining doctor "repeatedly diagnosed [the inmate] as suffering from a hernia, and he repeatedly concluded that referral to surgery was necessary," but the inmate "failed to receive the prescribed treatment for more than a year" because the examining doctor "fail[ed] to request the referral." 680 F.3d at 1123.

Here, the Defendant Nurses never examined Scott and had no authority to order treatment by outside providers. Nevertheless, NDOC medical providers that did examine Scott referred him to outside providers within hours of first suspecting Scott had a decrease flow in his fistula. Due to NDOC medical providers quick and decisive action, Scott received treatment within hours which prevented any delay in

37

dialysis and ultimately restored Scott's fistula. Unlike *Wilhelm,* Scott received referrals for all recommended treatment within days, if not hours, of the diagnosis. As also declared in *Wilhelm*, Scott's and the district court's mere "difference of medical opinion as to the need to pursue one course of treatment over another is insufficient, as a matter of law, to establish deliberate indifference." 680 F.3d at 1122.

In *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989), relied upon by the district court, this Court reversed the district court's grant of summary judgment because prison officials were aware of an urgent "dental" need but "failed to take any action." Here, Defendant Nurses could not have been aware of any urgent medical need because Scott's fistula was working, without complications, until August 12, 2021. Rather than take no action at all, as in *Hunt*, when decreased flow was in Scott's fistula was suspected, Scott received lifesaving care within hours, which prevented any delay in dialysis, and which care continued without delay to restore Scott's fistula.

In *Edmo v. Corizon*, Inc., 935 F.3d 757, 791-92 (9th Cir. 2019), relied upon by the district court, this Court held the "medically unacceptable under the circumstances" standard, required to establish an Eighth Amendment violation, is only met when "well-qualified" experts opined that the treatment received was "medically unacceptable." No medical provider has indicated that the care

38

provided to Scott was medically unacceptable in any respect, much less that the care of Defendant Nurses, who had no involvement in Scott's medical care, was somehow deficient. *See Sim v. Duran*, Case No. 19-17291, 2023 WL 141447, at \*2 (9th Cir. Jan. 10, 2023) (holding an inmate failed to establish deliberate indifference when the inmate's expert did "not attribute any fault to the specific treatment provided by either doctor"); *Santiago v. Gage*, 859 Fed. Appx. 112, 113-14, 2021 WL 2395917 (9th Cir. 2021) (holding an inmate's argument that doctor's "decision was medically unacceptable" because it conflicts with the [medically accepted] Standards of Care" did not establish deliberate indifference because the inmate has presented no [expert] testimony or other evidence to show that [the doctor's] decision in fact contradicted the [medically accepted] Standards of Care"); *see also Balla v. Idaho*, 29 F.4th 1019, 1026 (9th Cir. 2022) (holding an inmate did not establish deliberate indifference, despite conflicting testimony from medical professionals, when the medical "testimony presented by both sides [was] medically acceptable," as "the difference in opinion between medical professionals on the adequacy of the medical care did not rise to the level of deliberate indifference"). As no medical provider has opined that the care Scott received was deficient in any respect, Scott and the district court's speculative opinion that Scott's care was deficient cannot

39

establish an Eighth Amendment violation as set forth in *Edmo*. 935 F.3d at 786.

Contrary to the district court's faulty conclusion, this Court, in *Broughton v. Cutter Laboratories*, 622 F.2d 458 (9th Cir. 1980), never held that a six (6) day delay in treating hepatis could support a claim of deliberate indifference. Instead, this Court "believe[ed] it to be a close question whether [the prisoner's] complaint is frivolous," but held that the district court erred when dismissing the complaint with prejudice because the prisoner should "be given an opportunity to amend his complaint," as the "complaint does not provide [this Court] with enough information to determine whether he could maintain such a cause of action or not." *Id*. at 459-60. Accordingly, *Broughton* cannot be upon to establish a violation of any right, much less clearly establish a violation of the Eighth Amendment, beyond debate.

In *Carley*, this Court expressly rejected the district court's suggestion that the law is clearly established that "prison doctors are deliberately indifferent when[ever] they fail to provide or delay providing necessary medical treatment" because "this defines the right too broadly in light of our precedents that require us to "look at the law 'in light of the specific context of the case, not as a broad general proposition.'" 103 F.4th at 661. The Court held the "appropriate inquiry is not whether evolving medical standards prescribed a course of best

40

treatment and practice, but whether the medical standard was so well established that the failure to prescribe the course of treatment could only be considered deliberate indifference within the meaning of the Eighth Amendment." *Id.*

Just as in *Carley,* both Scott and the district court fail to cite any "precedent from the Supreme Court, our court, or 'a robust consensus of cases of persuasive authority," which would establish that the care Scott received was inadequate in any respect, much less establish that the care medically unacceptable under the circumstances. As held in *Carely*, Scott's claim fails because "modest care, even where a complete cure may be available, often meets the minimally adequate medical care standard that the Eighth Amendment imposes." *Id.* Here, Scott received much more than modest care, and therefore the care Scott received far exceeded Eighth Amendment standards. He received lifesaving care which prevented any delay in dialysis, which continued without delay to restore Scott's fistula.

*Zorn* forecloses any argument that Defendant Nurses are not shielded by qualified immunity. In *Zorn*, the Supreme Court rejected the conclusion that circuit authority, which established the general principle 'that the gratuitous use of pain compliance techniques—such as a rear-wristlock—on a protestor who is passively resisting arrest constitutes excessive force,'" could overcome qualified immunity because

41

it did not "obviously resolve whether using a rear wristlock to move a noncompliant protester after repeated warnings violates the Fourth Amendment, . . . as it fails to specify which circumstances make the use of force 'gratuitous.'" 2026 WL 795469, at *3.

This Court should similarly reject the argument that circuit authority which establishes the general principal that delay in providing medical care, under specific circumstances which are not present in this case, can overcome Defendant Nurses' entitlement to qualified immunity because cases relied upon by the district court fails to specify which circumstances would make delay unreasonable in this case, and no court has held that prison nurses, who never examined the offender, violate the Eighth Amendment when they had no control over referring a prisoner to outside medical care, especially when the offender was provided outside care within hours of suspecting a decrease flow in a fistula, which prevented any delay in dialysis, and which care continued without delay to restore Scott's fistula. Scott therefore cannot establish a constitutional violation, much less meet his burden of showing a violation that was clearly established, beyond debate. *See Carley*, 103 F.4th at 659-60 (holding the "burden of proof rests" with the [inmate] to prove a both that "the officials conduct violated a constitutional right," and that the "violation was clearly established at the time of the violation"). Accordingly, Defendant

42

Nurses are shielded by qualified immunity, and the district court erred when denying Defendants' motion to dismiss. This Court should therefore reverse the district court's judgment and order the district court to grant Defendants' motion to dismiss because they are shielded by qualified immunity.

## VIII. CONCLUSION

For the foregoing reasons, this Court reverses the district court's judgment denying Defendants' motion for summary judgment, and remand with instruction grant the motion because Defendants are entitled to qualified immunity.

Respectfully submitted April 7, 2026,

> AARON D. FORD
> Attorney General
>
> By:  */s/ Chris Davis*
> Chris Davis (Bar No. 6616)
> Senior Deputy Attorney General
>
> *Attorneys for the Defendants-Appellants*

43

## **STATEMENT OF RELATED CASES**

The undersigned attorney asserts that I am unaware of any related cases pending in the Ninth Circuit Court of Appeals.

## **CERTIFICATE OF COMPLIANCE**

I certify that pursuant to Fed. R. App. P. 32(a)(7)(C) and 9th Cir. R. 32-1, the attached opening brief is proportionately spaced, has a typeface of 14 points or more and contains 9302 words.

Respectfully submitted  April 7, 2026,

AARON D. FORD
Attorney General

By:   /s/ *Chris Davis*
Chris Davis (Bar No. 6616)
Senior Deputy Attorney General

*Attorneys for the Defendants-Appellants*

44

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **DEFENDANTS-APPELLANTS' OPENING BRIEF** and **VOLUMES I - III of DEFENDANTS-APPELLANTS' EXCERPTS OF RECORDS** with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate electronic system on April 7, 2026.

Participants in the case who are registered users will be served by the appellate electronic filing system, or by email.

I further certify that participants in the case that are not registered users have been served by First-Class Mail, postage prepaid, to:

James Edward Scott
3900 Meadows Lane
Las Vegas, NV 89107

*Plaintiff-Appellant, pro se*

/s/ *Kimalee Goldstein*
An employee of the Office of the
Nevada Attorney General

45