25-6843

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

JAMES EDWARD SCOTT III,
Plaintiff-Appellee,

v.

MELISSA MICHELL, et al.,
Defendants-Appellants,

and

RN SHARON, Dismissed per ECF No. 5; et al.,
Defendants.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA,
D.C. No. 2:23-cv-00693-APG-NJK

## DEFENDANTS-APPELLANTS' EXCERPTS OF
## RECORD VOLUME I (ER001-ER028)

Respectfully submitted by:
AARON D. FORD
Attorney General
CHRIS DAVIS (Nevada Bar No. 6616)
Senior Deputy Attorney General
Office of the Attorney General, State of Nevada
1 State of Nevada Way, Suite 100
Las Vegas, Nevada 89119
(702) 486-9252 (phone)
cwdavis@ag.nv.gov
*Attorneys for Defendants-Appellants*
*Melissa Mitchell, Gaylene Fukagawa,*
*Vanessa Timbreza, Kellen Prost,*
*and Lorenzo Villegas*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

JAMES EDWARD SCOTT, III,

                      Plaintiff,

   v.

MITCHELL, *et al.*,

                 Defendants.

Case No. 3:23-cv-00231-ART-CLB

ORDER ADOPTING REPORT AND RECOMMENDATION (ECF NO. 48)

*Pro se* Plaintiff James Scott brings this civil rights action under § 1983 claiming his Eighth Amendment rights were violated when Defendants Melissa Mitchell ("Mitchell"), Gaylene Fukagawa ("Fukagawa"), Vanessa Timbreza ("Timbreza"), Kellen Prost ("Prost"), and Lorenzo Villegas ("Villegas") (collectively "Defendants") delayed the treatment of his AV fistula, resulting in the permanent loss of the fistula and necessitating an inferior form of dialysis treatment. (ECF No. 1-1.)

Before the Court is Defendants' Motion for Summary Judgment (ECF Nos. 38, 40) of Mr. Scott's deliberate indifference claim. United States Magistrate Judge Carla L. Baldwin has issued a Report and Recommendation ("R&R") (ECF No. 48) recommending denial of Defendants' motion. Defendants have filed two objections to that R&R. (ECF No. 49.) For the reasons identified below, the Court overrules Defendants' objections, adopts the R&R, and denies the motion for summary judgment.

## I.    FACTS

The Court adopts the following facts as recited in the magistrate judge's Report and Recommendation. (ECF No. 48 at 1-3.)

Mr. Scott is a former inmate in the custody of the Nevada Department of Corrections ("NDOC"). The events of his Complaint occurred while Mr. Scott was

housed at the Northern Nevada Correctional Center ("NNCC"). (ECF No. 1-1.)

Mr. Scott was diagnosed with end-stage kidney disease on May 17, 2019. (*Id.* at 6.) To treat this condition, Mr. Scott received dialysis through an AV fistula in his right arm. (*Id.* at 21.) On May 1, 2021, Mr. Scott noticed that his fistula was clotting. (*Id.*) Mr. Scott immediately sought emergency care at the infirmary in housing unit 8A. (*Id.*)

Mr. Scott explained the situation to Corrections Officer Kleymann and the John and Jane Doe nurses who were in the infirmary providing insulin to other inmates. (*Id.* at 21-22.) Mr. Scott emphasized that he needed medical staff to verify with a stethoscope that his fistula was clotting and, if so, to be immediately transported to the hospital for surgery to salvage it. (*Id.* at 22). Mr. Kleymann and the nurses refused to provide Mr. Scott care or even radio for other medical staff to help him. (*Id.*) Mr. Scott then sought help in unit 3's hospice area and spoke with a John Doe there who radioed Corrections Officer White in unit 8A. (*Id.*) White instructed Scott to return to the unit 8A infirmary. (*Id.*)

Upon his arrival at the infirmary, medical staff confirmed that Mr. Scott's AV fistula had "clotted off." (*Id.*) Mr. Scott advised Nurse John Doe that he needed emergency care at a hospital to salvage the fistula. (Id. at 22–23). John Doe failed to respond. (*Id.* at 23). The next day Mr. Scott confirmed with Melissa Mitchell, Gaylene Fukagawa, Vanessa, Malory, Kellen/Caroline, Kathy, and Lorenzo Villegas that his fistula had clotted, and he could not receive his life-saving dialysis treatment through it unless he quickly received hospital care to salvage it. (*Id.*) All agreed that Mr. Scott required hospital care on an emergency basis if he hoped to save his fistula. (*Id.*) Each of them was aware that receiving dialysis through a perma-catheter as opposed to an AV fistula exposed Mr. Scott to health and safety risks. (*Id.*)

Despite their knowledge of Mr. Scott's need for emergency treatment to repair his AV fistula, these Defendants waited 40 days before sending him to the

hospital. (*Id.*) At the hospital, Mr. Scott received a thrombectomy that failed to remove the clot but resulted in a "gruesome scar, 17 staples going down his right forearm, and substantial pain and suffering and mental and emotional trauma." (*Id.* at 24). Because the hospital was unable to save Mr. Scott's AV fistula, he now receives dialysis through a perma-catheter. (Id. at 24). This is an "inferior form of dialysis" and a "permanent" change for treating Mr. Scott's kidney condition. (*Id.*)

Mr. Scott is highly susceptible to infection through his perma-catheter site, so he must keep it clean and dry with sterile dressings. (*Id.* at 6–13). Prison medical staff initially changed Mr. Scott's catheter-site dressings when the medical staff who performed his dialysis treatment could not. But prison medical staff eventually refused to change Mr. Scott's dressings, stating he can do the procedure himself because "you wanna file grievances so much." (*Id.* at 8). Mr. Scott has contracted a staphylococcus bacterial infection of his blood on numerous occasions because he is forced to change his dressings himself and, in his cell, which is not a sterile environment. (*Id.* at 6–13).

In January of 2025, Defendants filed a motion for summary judgment seeking to dismiss Mr. Scott's claim for deliberate indifference to a serious medical need. (ECF No. 38.) The magistrate judge then issued a report and recommendation that recommending denial of Defendants motion, (ECF No. 48) and Defendants timely objected (ECF No. 49). Defendants specifically claim that the magistrate judge erred because, one, the record evidence shows that Mr. Scott's rights were not violated, and two, there is not clearly established law to put Defendants on notice. (*Id.*)

## II.    LEGAL STANDARD

### A. SUMMARY JUDGMENT

A party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp v.*

*Cartrett,* 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id.* at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson,* 477 U.S. at 250.

In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin,* 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.,* 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson,* 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.' . . . In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.,* 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an

element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex,* 477 U.S. at 323-25.

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita,* 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex,* 477 U.S. at 324.

### B. QUALIFIED IMMUNITY

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009). Qualified immunity is an immunity from suit rather than a defense to liability, and "ensures that officers are on notice their conduct is unlawful before being subjected to suit." *Tarabochia v. Adkins,* 766 F.3d 1115, 1121 (9th Cir. 2014).

In deciding whether officers are entitled to qualified immunity, courts consider (1) whether the facts show that the officer's conduct violated a constitutional right, and (2) if so, whether that right was clearly established at the time of the alleged violation. *Id.* The plaintiff bears the burden of proof that the right allegedly violated was clearly established. *Romero v. Kitsap Cnty.,* 931

F.2d 624, 627 (9th Cir.1991). Thus, the plaintiff must prove that "a reasonable officer would have had fair notice that the action was unlawful." *Tarabochia*, 766 F.3d at 1125 (internal quotation marks omitted). A government official's conduct "violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [the] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

While a case directly on point is not required for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* Further, the right must be defined at "the appropriate level of generality," and a court "must not allow an overly generalized or excessively specific construction of the right to guide [its] analysis." *Cunningham v. Gates*, 229 F.3d 1271, 1288 (9th Cir. 2000); *see also al-Kidd*, 563 U.S. at 741-42. The relevant question is whether the state of the law at the time gives officials fair warning that their conduct is unconstitutional. *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1064 (9th Cir. 2013).

In the summary judgment context, judgment is appropriate in favor of the moving party only if, "taking the facts in the light most favorable to [the non-moving party], a reasonable jury could not find that the officer's conduct violated a constitutional right." *Young v. Cnty. Of Los Angeles*, 655 F.3d 1156, 1160 (9th Cir. 2011) (internal quotation marks omitted). Thus, a court adjudicating qualified immunity at the summary judgment stage must make two determinations: "(1) whether the law governing the conduct at issue was clearly established and (2) whether the facts as alleged could support a reasonable belief that the conduct in question conformed to the established law." *Green v. City & County of San Francisco*, 751 F.3d 1039, 1052 (9th Cir. 2014).

## C. EIGHTH AMENDMENT DELIBERATE INDIFFERENCE

The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). The Amendment's proscription against the "unnecessary and wanton infliction of pain" encompasses deliberate indifference by state officials to the medical needs of prisoners. *Id.* at 104 (internal quotation omitted). It is thus well established that "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id.* at 105.

Claims of deliberate indifference are analyzed under a two-part test. The plaintiff must satisfy both an objective standard – that the deprivation was serious enough to constitute cruel and unusual punishment – and a subjective standard – deliberate indifference." *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). To establish the first prong, "the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotations omitted). Serious medical needs include those "that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell*, 763 F.3d at 1066 (internal quotation omitted).

The subjective prong considers the defendant's state of mind, the extent of care provided, and whether the plaintiff was harmed. "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (internal quotation omitted). However, a prison official may only be held liable if he or she "knows of and disregards an excessive

risk to inmate health and safety." *Toguchi v. Chung,* 391 F.3d 1050, 1057 (9th Cir. 2004). The defendant prison official must therefore have actual knowledge from which he or she can infer that a substantial risk of harm exists, and also make that inference. *Colwell,* 763 F.3d at 1066. An accidental or inadvertent failure to provide adequate care is not enough to impose liability. *Estelle,* 429 U.S. at 105–06. Rather, the standard lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other…" *Farmer v. Brennan,* 511 U.S. 825, 836 (1994). Accordingly, the defendants' conduct must consist of "more than ordinary lack of due care." Id. at 835 (internal quotation omitted).

Evidence of improper or ulterior motive can support a conclusion that a defendant failed to exercise sound medical judgment. *Snow v. McDaniel,* 681 F.3d 978, 987 (9th Cir. 2012) (overruled in part on other grounds by *Peralta v. Dillard,* 744 F.3d 1076 (9th Cir. 2014)). Suspicions of malingering may also be considered an indication of an ulterior motive whereby a defendant failed to take a plaintiff's condition seriously and thus acted recklessly in failing to provide proper care. *George v. Sonoma County Sheriff's Dept.,* 732 F.Supp.2d 922, 937-938 (N.D. Cal. 2010).

Prison officials' conduct may be deliberately indifferent where their "'chosen course of treatment was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to the prisoner's health." *Toguchi,* 391 F.3d at 1058 (quoting *Jackson v. McIntosh,* 90 F.3d 330, 332 (9th Cir. 1996)). In addition, it is only where those infirm treatment decisions result in harm to the plaintiff—though the harm need not be substantial—that Eighth Amendment liability arises. *Jett,* 439 F.3d at 1096.

**D. REVIEW OF REPORTS AND RECOMMENDATIONS**

Under the Federal Magistrates Act, a Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by [a] magistrate

judge." 28 U.S.C. § 636(b)(1). Where a party timely objects to a magistrate judge's report and recommendation, then the court is required to "make a *de novo* determination of those portions of the [report and recommendation] to which objection is made." 28 U.S.C. § 636(b)(1). A court is not required to conduct "any review at all . . . of any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985).

## III.   DISCUSSION

Defendants raise two objections to the magistrate judge's R&R. First, they claim there are sufficient facts to determine that the treatment Mr. Scott received was medically acceptable under the circumstances. Second, they argue that there was not clearly established law to put Defendants on clear notice of an Eighth Amendment violation. The Court addresses each of these objections below.

### A.   OBJECTION 1

Defendants object to the magistrate judge's finding of a genuine issue of material fact as to whether delaying Mr. Scott's thrombectomy procedure for thirty-three days was medically acceptable given their knowledge of his end-stage kidney disease and risks posed by the procedure. The Court overrules this objection.

Defendants argue that the medical records "blatantly contradict" Mr. Scott's explanation of his treatment because one post-operative note from Dr. Harlow after Mr. Scott's surgery claims that at the end of the procedure "the fistula was open and there was no evidence of stenosis." (ECF Nos. 49 at 4-5, 40-1 at 2-4); *see Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). They also argue that Mr. Scott's claims are "self-serving" and "without any medical support." (*Id.* at 5.)

Defendants claim that Mr. Scott's lack of citations to medical records or authorities indicates that his personal attestations to the complications following his surgery are inherently self-serving. Defendants' own citations to medical authorities, however, offer support for Mr. Scott's claims. It is undisputed that a hemodialysis catheter is a less-preferred form of permanent dialysis access. (ECF No. 38 at 2 n. 3.) "Studies have demonstrated a clinically significant decrease in the rate of infections, hospitalizations, catheter failure, central venous stenosis, and mortality" with AV fistulas as compared to hemodialysis catheters. (*Id.*) Thrombosis is the most common complication that may arise with AV fistulas, which increases with the degree of stenosis. (*Id.*) Defendants do not offer any facts or records that "blatantly contradict" Mr. Scott's account that dialysis was riskier after the surgery due to his having to use a catheter: in fact, they cite to a report that states that alternatives to AV fistulas do result in higher rates of complications. (ECF No. 38 at 2 n. 3.) This is not a version of events that is "so utterly discredited by the record that no reasonable jury could have believed" Mr. Scott's understanding of the treatment. *Scott*, 550 U.S. at 380.

Throughout their treatment of Mr. Scott, medical professionals emphasized the urgency necessitated by his condition. On August 14, a physician at CTH found that Mr. Scott's fistula was "possibly stenosed." (ECF No. 40-1 at 26.) An NDOC "consultation request/report" from August 16, 2021, notes that Mr. Scott "needs above eval/intervention ASAP." (ECF No. 40-1 at 20.) On August 17, Dr. Halow acknowledged that Mr. Scott had thrombosis. (ECF No. 40-1 at 7.) It took ten days for a doctor to acknowledge the progress note and the procedure was not scheduled for another twenty days. (*Id.*) What a medical professional intended by ordering intervention "ASAP" and whether the surgery's delay caused substantial harm are factual questions that must be decided by a factfinder.

Defendants' own records lack the necessary legibility to fully support their claims that there were no complications following Mr. Scott's thrombectomy, as

they only cite the post-operative report on September 15, 2021, immediately following the surgery. (ECF No. 49 at 5.) This does not account for Mr. Scott's health in the days before surgery or the weeks that followed. At the very least, progress notes from September 9, September 10, October 22, October 26, October 29, November 2, November 18, and November 20 of 2021 are unreadable. (ECF No. 40-1 at 12-19.)

By October 13, 2021, NDOC physician's orders request an "eval/intervention" for CVC dialysis access "ASAP." (ECF No. 40-1 at 21.) Handwritten notes on a Sierra Nevada Nephrology-NNCC report from October 14, 2021, which are also largely illegible, include a note at the bottom covered by NDOC numerical page labeling that begins with "needs surgical eval." (ECF No. 40-1 at 8.)

Without having a full understanding of the preceding notes, it is unclear how Mr. Scott's condition deteriorated to require a different type of dialysis and need another evaluation "ASAP" just a month after surgery. Common sense would indicate that this course of treatment—an initial surgery (thrombectomy) performed with the intention of preserving an AV fistula that led to a second surgery to insert a perma-catheter (after the first surgery to salvage the AV fistula failed)—was not necessarily successful. These notes would be particularly relevant for the evaluating the side effects and complications that Mr. Scott says he experienced in the aftermath of the thrombectomy, and whether a subsequent surgical procedure could have been prevented. (ECF No. 40-1 at 16-18.)

A reasonable jury could find that Defendants acted with deliberate indifference towards Mr. Scott when they delayed his medical care based on the available records.

**B. OBJECTION 2**

Defendants next object that the magistrate judge's order does not identify the clearly established right that Defendants are alleged to have violated with

sufficient specificity. In particular, Defendants argue that the magistrate judge's reliance on *Stewart v. Aranas* is misplaced because it was interpreted at too high a level of generality and was decided in 2022, after the events at issue here. *Stewart v. Aranas*, 32 F.4th 1192, 1194-95 (9th Cir. 2022). The Court disagrees and overrules this objection.

"A right is clearly established when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (per curiam) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam)). "Although this Court's case law does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate.'" *Id.* (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam)). "This inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Id.* (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam)). Officials "can still be on notice that their conduct violates established law, even in novel factual circumstances." *Clement v. Gomez*, 298 F.3d 898, 906 (9th Cir. 2002) (citing *Hope v. Pelzer*, 536 U.S. 730, 731 (2002)).

The magistrate judge's reliance on *Stewart* was not misplaced because it confirmed a clearly established right: delaying medical treatment can violate the Eighth Amendment if it results in harm. *Stewart*, 32 F.4th at 1195 (citing *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014); *Shapley v. Nev. Bd. of State Prison Comm'rs,* 766 F.2d 404, 407 (9th Cir. 1985)). As a starting point, the court in *Stewart* addressed the level of generality/specificity issue that Defendants raise, stating, "A case directly on point is unnecessary but the constitutional question must be 'beyond debate.'" *Id.* at 1195 (citing *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011)). The court in *Stewart* put the delay of medical treatment in the category of "beyond debate," explaining, "It is true that we have not found a case

on all fours with the factual context presented here. But it has been established that 'deny[ing], delay[ing], or intentionally interfer[ing] with medical treatment' can violate the constitution." *Id.* (citing *Colwell*, 763 F.3d at 1066). The fact that *Stewart* was decided in 2022, after the conduct in this case, is immaterial because *Stewart* merely confirmed that the delay of medical treatment as a clearly established right is "beyond debate" and that right predated *Stewart. Id.*

Defendants also argue that *Stewart*, and by extension, *Shapley v. Nev. Bd. of State Prison Comm'rs*, are not analogous because the duration of the delay of treatment was years instead of weeks. *Stewart*, 32 F.4th at 1194-95. A doctor's awareness of a need for treatment, followed by unnecessary delay in implementing the prescribed treatment, may be found medically unacceptable. *Wilhem v. Rotman*, 680 F.3d 1113, 1123 (9th Cir. 2012); *see also Edmo v. Corizon, Inc.*, 935 F.3d 757 (9th Cir. 2019) ("Accepted standards of care and practice within the medical community are highly relevant in determining what care is medically acceptable and unacceptable."). The Ninth Circuit has found that a delay of as little as six days in treating hepatitis could support a claim of deliberate indifference, *Broughton v. Cutter Labs*, 622 F.2d 458, 459-60 (9th Cir. 1980) (per curiam), while a delay of three months was found inappropriate for a dental procedure, *Hunt v. Dental Dept.*, 865 F.2d 198, 201 (9th Cir. 1989). A court in the District of Nevada has held that a failing to check a hypertensive patient's blood pressure weekly amounted to medically unacceptable delay and deliberate indifference. *Villaverde v. Aranas*, No. 2:18-cv-00921-GMN-EJY, 2022 WL 943067 at *10 (D. Nev. Mar 28, 2022) (denying qualified immunity). Therefore, although Mr. Scott's delay of treatment was shorter in duration than *Stewart* or *Shapley*, case law still supports a finding that depending on the treatment required, a delay of thirty-three days could be inappropriate. Defendants do not provide any evidence of accepted standards of care or practice that would prove otherwise.

Construing the facts in a light most favorable to Mr. Scott, Defendants knew that Mr. Scott suffered from a clotted AV fistula, and after receiving medical advice for evaluation and intervention "as soon as possible," waited ten days before signing off on a procedure and twenty more days to schedule it. (ECF Nos. 38 at 9-10, 40-1 at 20.) Mr. Scott alleges that by waiting more than a medically appropriate three to four days to perform the procedure, he lost the ability to utilize a medically superior form of dialysis and has subsequently suffered from a variety of different health issues, ranging from infections to unnecessary surgical procedures. (ECF No. 46 at 2.) Mr. Scott has offered evidence that Defendants unacceptably delayed urgent medical treatment and that he suffered long term negative health consequences as a result of that delay. Defendants have failed to offer any evidence to the contrary.

Ninth Circuit case law clearly establishes with sufficient specificity that an unnecessary delay in treatment is a violation of the Eighth Amendment. There is a dispute of material fact as to whether Defendants' delay of Mr. Scott's treatment amounted to deliberate indifference under the circumstances.

## V.    CONCLUSION

It is therefore ordered that Defendants' objections to the Report and Recommendation (ECF No. 49) are OVERRULED.

It is further ordered that the Report and Recommendation recommending denial of summary judgment for Defendants (ECF No. 48) is accepted and ADOPTED.

It is further ordered that Defendants' motion for summary judgment (ECF No. 38) is DENIED.

//

//

//

//

Dated this 26th day of September 2025.

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

\* \* \*

JAMES EDWARD SCOTT, III,

Plaintiff,

v.

MICHELL, *et al.*,

Defendants.

Case No. 3:23-CV-00231-ART-CLB

**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE[1]**

[ECF No. 38]

This case involves a civil rights action filed by Plaintiff James Edward Scott ("Scott") against Defendants Melissa Mitchell ("Mitchell"), Gaylene Fukagawa ("Fukagawa"), Vanessa Timbreza ("Timbreza"), Kellen Prost ("Prost"), and Lorenzo Villegas ("Villegas") (collectively "Defendants"). Currently pending before the Court is Defendants' motion for summary judgment. (ECF Nos. 38, 40[2].) Scott responded, (ECF No. 46), and Defendants replied, (ECF No. 47). For the reasons stated below, the Court recommends Defendants' motion for summary judgment, (ECF No. 38), be denied.

## I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Scott is a former inmate in the custody of the Nevada Department of Corrections ("NDOC"). The events related to this case occurred while Scott was housed at the Northern Nevada Correctional Center ("NNCC").

Scott alleges the following in his complaint: on May 16, 2019, Scott was diagnosed with end-stage kidney disease. (ECF No. 5 at 6.) To treat this condition, Scott received dialysis through an AV fistula in his right arm. (*Id.* at 21.) On May 1, 2021, Scott noticed his fistula was clotting. (*Id.*) Scott immediately sought emergency care at the infirmary in housing unit 8A. (*Id.*)

---

[1]      This Report and Recommendation is made to the Honorable Anne R. Traum, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2]      ECF No. 40 consists of Scott's medical records filed under seal in support of Defendants' motion for summary judgment.

Scott explained the situation to Correctional Officer Kleymann and John Doe nurses who were in the infirmary providing insulin to other inmates. (*Id.* at 21-22.) Scott emphasized that he needed medical staff to verify with a stethoscope that his fistula was clotting and, if so, to be immediately transported to the hospital for surgery to salvage it. (*Id.* at 22.) Kleymann and the nurses refused to provide Scott care or even radio for other medical staff to help him. (*Id.*) Scott then sought help in unit 2's hospice are and spoke with a John Doe there who radioed Correctional Officer White in unit 8A. (*Id.*) White instructed Scott to return to the unit 8A infirmary. (*Id.*)

Upon his arrival at the infirmary, medical staff confirmed that Scott's AV fistula had "clotted off." (*Id.*) Scott advised Nurse John Doe that he needed emergency care at a hospital to salvage the fistula. (*Id.* at 22-23.) John Doe failed to respond. (*Id.* at 23.) The next day, Scott confirmed with Defendants that his fistula had clotted, and he could not receive his life-saving dialysis treatment through it unless he quickly received hospital care to salvage it. (*Id.*) All Defendants agreed that Scott required hospital care on an emergency basis if he hoped to save his fistula. (*Id.*) Each Defendant was aware that receiving dialysis through a perma-catheter as opposed to an AV fistula exposed Scott to health and safety risks. (*Id.*)

Despite their knowledge of Scott's need for emergency treatment to repair his AV fistula, these Defendants waited 40 days before sending him to the hospital. (*Id.*) At the hospital, Scott received a thrombectomy that failed to remove the clot but resulted in a "gruesome scar, 17 staples going down his right forearm, and substantial pain and suffering and mental and emotional trauma." (*Id.* at 24.) Because the hospital was unable to save Scott's AV fistula, he now receives dialysis through a perma-catheter. (*Id.* at 24.) This is an "inferior form of dialysis" and a "permanent" change for treating Scott's kidney condition. (*Id.*)

Scott is highly susceptible to infection through his perma-catheter site, so he must keep it clean and dry with sterile dressings. (*Id.* at 6-13.) Prison medical staff initially changed Scott's catheter-site dressings when the medical staff who performed his dialysis treatment could not. But prison medical staff eventually refused to change Scott's

dressings, stating he can do the procedure himself because "you wanna file grievances so much." (*Id.* at 8.) Scott has contracted a staphylococcus bacterial infection of his blood on numerous occasions because he is forced to change his dressings himself and, in his cell, which is not a sterile environment. (*Id.* at 6-13.) On at least one occasion, medical staff delayed treating Scott's bacterial infection for 21 days, which resulted in worse symptoms. (*Id.* at 15-19.)

On January 21, 2025, Defendants moved for summary judgment arguing they are entitled to qualified immunity. (ECF No. 38.)

## II.     LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law applicable to the claim determines which facts are material. *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can preclude summary judgment, and factual disputes that are irrelevant are not material. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

The parties subject to a motion for summary judgment must: (1) cite facts from the record, including but not limited to depositions, documents, and declarations, and then (2) "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be authenticated, and if only personal knowledge authenticates a document (i.e., even a review of the contents of the document would not prove that it is authentic), an affidavit attesting to its authenticity must be attached to the submitted document. *Las Vegas Sands, LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts

are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Id.* "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Id.* However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the nonmoving party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its burden for summary judgment, the nonmoving party is not required to provide evidentiary materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the nonmoving party to establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation omitted). In other words, the nonmoving party may not simply rely upon the allegations or denials of its pleadings; rather, they must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. *See* Fed. R. Civ. P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden is "not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence." *Coomes v. Edmonds Sch. Dist. No. 15*, 816 F.3d

1255, 1259 n.2 (9th Cir. 2016) (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). The non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere assertions and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *Matsushita*, 475 U.S. at 586-87.

"[A] motion for summary judgment may not be granted based on a failure to file an opposition to the motion . . . ." *Heinemann v. Satterberg*, 731 F.3d 914, 916 (9th Cir. 2013). Per the advisory committee notes to Rule 56, district courts are prohibited from granting "summary judgment 'by default even if there is a complete failure to respond to the motion.'" *Id.* at 917 (citing Fed. R. Civ. P. 56 Advisory Committee Notes (2010)). "If there is a failure to respond, the Rule 'authorizes the court to consider a fact as undisputed.'" *Id.* (quoting Fed. R. Civ. P. 56 Advisory Committee Notes (2010)). Where the nonmoving party has failed to oppose summary judgment, the Court must still determine if the moving party has met their summary judgement burden. *See id.*

When a *pro se* litigant opposes summary judgment, the contentions in their motions and pleadings may be considered as evidence to meet the non-party's burden to the extent: (1) contents of the document are based on personal knowledge, (2) they set forth facts that would be admissible into evidence, and (3) the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

Upon the parties meeting their respective burdens for the motion for summary judgment, the court determines whether reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015). The court may consider evidence in the record not cited by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3). Nevertheless, the court will view the cited records before it and will not mine the record for triable issues of fact. *Oracle Corp. Sec. Litig.*, 627 F.3d at 386 (if a nonmoving party

does not make nor provide support for a possible objection, the court will likewise not consider it).

## III.    DISCUSSION

Defendants move for summary judgment solely on the basis that they are entitled to qualified immunity. (ECF No. 38.) Specifically, Defendants argue Scott has failed to establish any deliberate indifference because, "[f]ollowing [Scott's] initial visit to medical on August 13, 2021, Scott was transported to CTH the very next day and thereafter was routinely seen up until he received a thrombectomy to correct the clot. From the time he first presented to the day he received the procedure, only 33 days had passed." (*Id.* at 11.) Additionally, Defendants argue "there was no clearly established case law that would have placed Defendants on clear notice that they were potentially violating Scott's rights." (*Id.*)

### A.    Qualified Immunity

The Eleventh Amendment bars damages claims and other actions for retroactive relief against state officials sued in their official capacities. *Brown v. Or. Dept. of Corrs.*, 751 F.3d 983, 988-89 (9th Cir. 2014) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)). State officials who are sued individually may also be protected from civil liability for money damages by the qualified immunity doctrine. More than a simple defense to liability, the doctrine is "an entitlement not to stand trial or face other burdens of litigation" such as discovery. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

When conducting a qualified immunity analysis, the Court asks "(1) whether the official's conduct violated a constitutional right; and (2) whether that right was 'clearly established' at the time of the violation." *Carley v. Aranas*, 103 F.4th 653, 659 (9th Cir. 2024) (quoting *Hines v. Youseff*, 914 F.3d 1218, 1227 (9th Cir. 2019)). "For a right to be clearly established, it must be 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Id.* at 661 (quoting *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (per curiam)). A right is clearly established if it would be clear to a reasonable official in the defendant's position that his conduct in the given

situation was constitutionally infirm. *Anderson v. Creighton,* 483 U.S. 635, 639-40, (1987); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 915 (9th Cir. 2012).

"[W]hether a constitutional right was violated . . . is a question of fact." *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1085 (9th Cir. 2009). While the Court decides as a matter of law the "clearly established" prong of the qualified immunity analysis, only the jury can decide the disputed factual issues. *See Morales v. Fry*, 873 F.3d 817, 824-25 (9th Cir. 2017); *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1037 (9th Cir. 2018). The Court will first address whether Defendants' conduct violated Scott's Eighth Amendment rights and will then address whether these rights were "clearly established" at the time of the violation.

### 1.   Whether Scott's Eighth Amendment Rights were Violated

The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency" by prohibiting the imposition of cruel and unusual punishment by state actors. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal quotation omitted). The Amendment's proscription against the "unnecessary and wanton infliction of pain" encompasses deliberate indifference by state officials to the medical needs of prisoners. *Id.* at 104 (internal quotation omitted). It is thus well established that "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id.* at 105.

Courts in this Circuit employ a two-part test when analyzing deliberate indifference claims. The plaintiff must satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Colwell*, 763 F.3d at 1066 (internal quotation omitted). First, the objective component examines whether the plaintiff has a "serious medical need," such that the state's failure to provide treatment could result in further injury or cause unnecessary and wanton infliction of pain. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Serious medical needs include those "that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition

that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell*, 763 F.3d at 1066 (internal quotation omitted).

Second, the subjective element considers the defendant's state of mind, the extent of care provided, and whether the plaintiff was harmed. "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan,* 296 F.3d 732, 744 (9th Cir. 2002) (internal quotation omitted). However, a prison official may only be held liable if he or she "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1050, 1057 (9th Cir. 2004). The defendant prison official must therefore have actual knowledge from which he or she can infer that a substantial risk of harm exists, and also make that inference. *Colwell*, 763 F.3d at 1066. An accidental or inadvertent failure to provide adequate care is not enough to impose liability. *Estelle*, 429 U.S. at 105–06. Rather, the standard lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other . . . ." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). Accordingly, the defendants' conduct must consist of "more than ordinary lack of due care." *Id.* at 835 (internal quotation omitted).

Moreover, the medical care due to prisoners is not limitless. "[S]ociety does not expect that prisoners will have unqualified access to health care…." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Accordingly, prison officials are not deliberately indifferent simply because they selected or prescribed a course of treatment different than the one the inmate requests or prefers. *Toguchi*, 391 F.3d at 1058. Only where the prison officials' "'chosen course of treatment was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to the prisoner's health,'" will the treatment decision be found unconstitutionally infirm. *Id.* (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). In addition, it is only where those infirm treatment decisions result in harm to the plaintiff—though the harm need not be substantial—that Eighth Amendment liability arises. *Jett*, 439 F.3d at 1096.

///

ER024                              ER024                              ER024

8

According to Defendants, Scott presented to the infirmary on August 13, 2021, because the AV fistula had stopped working and medical staff determined to monitor any changes or worsening of the symptoms. (ECF No. 40-1 at 18 (sealed).) The next day, Scott was transported to Carson Tahoe Hospital where he received a new non-tunnel dialysis catheter. (*Id.* at 18, 25-26.) On August 16, 2021, a consultation request/report was submitted requesting an evaluation with Dr. Beal for a possible thrombectomy or revision of the AV fistula. (*Id.* at 20.) On August 17, 2021, Scott was seen by Dr. Halow where it was determined Scott would undergo a right upper extremity fistula thrombectomy. (*Id.* at 6-7.) On August 26, 2021, physician's orders were submitted for Scott to receive the recommended thrombectomy procedure. (*Id.* at 21.) The procedure was performed on September 15, 2021, where the fistula was opened. (*Id.* at 1.)

In their motion for summary judgment, Defendants first argue that a review of the record cannot support any finding that there was a delay or purposeful act or inaction by any of the named Defendants. (ECF No. 38 at 9.) Defendants argue that although there was a 20-day delay in getting the recommendation for the thrombectomy to when the procedure was actually performed, Scott has failed to provide any admissible evidence that this 20-day delay caused any harm or further injury. (*Id.* at 9-10.) In sum, Defendants assert that no reasonable juror could review the relevant record and determine Scott's Eighth Amendment right was violated as a result of waiting 33 days from the initial presentation of his fistula being clotted and receiving the thrombectomy. (*Id.* at 10.)

Scott asserts in response that Defendants were deliberately indifferent to his serious medical needs as his AV fistula clotting is an undisputed serious medical condition, as dialysis is critical for survival, and Defendants were subjectively aware of his condition but failed to provide timely medical care leading to permanent loss of the AV fistula, the need for an inferior and riskier form of dialysis, and multiple infections, surgeries, and hospitalizations. (*See* ECF No. 46.)

As to the objective element of deliberate indifference, it appears to be undisputed that Scott's AV fistula clotting is a serious medical need. Thus, the Court finds that the

ER025                    ER025                    ER025

objective element of deliberate indifference has been satisfied.

As to the subjective element, Scott argues that Defendants delay in treating the clot led to permanent harm, unnecessary suffering, and life-threatening complications. (ECF No. 46.) Defendants argue that there was no deliberate indifference as a review of the record does not support any finding that there was a delay, or purposeful act or inaction by the Defendants. (ECF No. 38.)

First, the medical records provided by Defendants are mostly illegible as they consist of handwritten notes. (*See* ECF No. 40-1.) Further, Defendants do not provide any further evidence, such as declarations from Defendants or NDOC medical staff regarding Scott's medical treatment, responses to interrogatories, etc., to support their position. Thus, it is unclear to the Court that Scott's medical needs were in fact timely and adequately addressed. On this basis alone, the Court finds Defendants failed to meet their burden of establishing that no material issue of fact exists as to the claim.

However, even if the Defendants' materials were legible, the Court finds that a genuine issue of material fact exists as to whether the delay was medically acceptable under the circumstances. Scott specifically argues that the delay in provided the ordered treatment caused Scott further harm, specifically permanent loss of the AV fistula, the need for an inferior and riskier form of dialysis, and multiple infections, surgeries, and hospitalizations. (*See* ECF No. 46.) Thus, the Court cannot determine whether the delay in providing the surgery was medically acceptable under the circumstances. Because Defendants do not address these issues or provide any evidence aside from conclusory statements that the delay was reasonable, there is a factual dispute as to whether the delay was medically unacceptable under the circumstances.

Finally, Defendants argue Scott is unable to prove that Defendants knew of a serious medical need and disregarded the excessive risk to his health. However, given all of the above, it is possible for a jury to find that the delay in treatment was chosen in conscious disregard of an excessive risk to Scott's health.

///

Based on all of the above, the Court cannot say as a matter of law that Defendants were not deliberately indifferent to Scott's serious medical needs, which ultimately resulted in him undergoing further surgery and suffering life-long medical issues. Accordingly, the Court finds that genuine issues of material fact exist as to whether Scott's Eighth Amendment right was violated.

### 2.    Whether the Right was Clearly Established

Next, Defendants contend that even if the Court finds there is a question of fact as to whether a constitutional violation occurred, based on Scott's allegations, qualified immunity is appropriate "because there is no case that would put defendants on 'clear notice' that their actions in this particular case violated Scott's constitutional rights." (ECF No. 38 at 10.) "For a right to be clearly established it is not necessary that the very action in question have previously been held unlawful." *Jackson*, 90 F.3d at 332 (citing *Anderson*, 483 U.S. at 640). While it not required that there be a case directly on point before concluding that the law is clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)).

Scott alleges the violation of a clearly established right that "deny[ing], delay[ing], or intentionally interfer[ing] with medical treatment" can violate the constitution. *Colwell*, 763 F.3d at 1066. Further, it is clearly established that a delay in treatment can violate the constitution if it results in further harm. *See Stewart v. Aranas*, 32 F.4th 1192, 1195 (9th Cir. 2022) (citing *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (requiring that any treatment delays cause harm).) Thus, the Court finds that a reasonable prison official would know that a delay in treatment, which leads to further harm, violates a plaintiff's Eighth Amendment rights, as the law was clearly established at the time in question in this case. Therefore, the Court finds that Defendants are not entitled to qualified immunity.

Accordingly, the Court recommends that Defendants' motion for summary judgment be denied.

## IV.    CONCLUSION

For the reasons stated above, the Court recommends that Defendants' motion for summary judgment, (ECF No. 38), be denied.

The parties are advised:

1.    Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.    This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V.    RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment, (ECF No. 38), be **DENIED**.

**DATED**: April 18, 2025

_____
**UNITED STATES MAGISTRATE JUDGE**