**25-6843**

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

JAMES EDWARD SCOTT III,
Plaintiff-Appellee,

v.

MELISSA MICHELL, et al.,
Defendants-Appellants,

and

RN SHARON, Dismissed per ECF No. 5; et al.,
Defendants.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA,
D.C. No. 3:23-cv-00231-ART-CLB

# DEFENDANTS - APPELLANTS' REPLY BRIEF

Respectfully submitted by:
AARON D. FORD
Attorney General
CHRIS DAVIS (Nevada Bar No. 6616)
Senior Deputy Attorney General
Office of the Attorney General, State of Nevada
1 State of Nevada Way, Suite 100
Las Vegas, Nevada 89119
(702) 486-9252 (phone)
cwdavis@ag.nv.gov
*Attorneys for Defendant-Appellants*
*Gaylene Fukagawa, Melissa Mitchell,*
*Kellen Prost, Vanessa Timbreza,*
*and Lorenzo Villegas*

# TABLE OF CONTENTS


TABLE OF CONTENTS ........................................................ ii

TABLE OF AUTHORITIES ..................................................... iv

I. INTRODUCTION ............................................................ 1

II. ARGUMENT ................................................................ 4

A. This Court Has Jurisdiction Over this Appeal of the District Court's Improper Denial of Defendants' Motion for Summary Judgment Asserting Qualified Immunity ........ 4

B. Scott Admits Defendant Nurses Are Entitled to Qualified Immunity When an Offender Fails to Establish a Violation of a Clearly Established Law, Beyond Debate ........................................................ 7

C. Scott Ignores the Undisputed Facts of this Case which Establish that the Defendant Nurses Did *NOT* Violate the Eighth Amendment ........................................ 8

1. Even if Defendant Nurses Had Become Aware that Scott's Fistula Was Not Functioning, these Nurses Did Not Delay Scott's Care ............................ 13

2. Defendant Nurses Did *NOT* Violate the Eighth Amendment Because They Had No Control Over Scott Receiving a Thrombectomy ................................ 20

3. Scott Cannot Establish an Eighth Amendment Violation Because He Lacks Objective Medical Evidence Establishing Causation and Harm .............. 21

C. Scott Failed to Meet His Burden of Establishing, Beyond Debate, a Violation of Clearly Established Law ..... 24

D. Despite Scott's Insinuations, Defendant Nurses Did *NOT* Waive Any Arguments on Appeal .................................31

III. CONCLUSION .................................................................................33

STATEMENT OF RELATED CASES ...................................................34

CERTIFICATE OF COMPLIANCE .......................................................34

CERTIFICATE OF SERVICE ................................................................35

# TABLE OF AUTHORITIES

## CASES

*Allen v. Santa Clara Cnty. Corr. Peace Officers Ass'n*, 38 F.4th 68 (9th Cir. 2022) ........ 31

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) ........ 7

*Bartley v. Kim's Enter. of Orlando, Inc.*, Case No. 13–13507, 568 Fed. Appx. 827 (11th Cir. 2014) ........ 32

*Behrens v. Pelletier*, 516 U.S. 299 (1996) ........ 4, 5

*Carley v. Aranas*, 103 F.4th 653 (9th Cir. 2024) ........ 6, 28, 30

*Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010) ........ 31

*Colwell v. Bannister*, 763 F.3d 1060 (9th Cir. 2014) ........ 27

*Crawford-El v. Britton*, 523 U.S. 574 (1998) ........ 9

*Edmo v. Corizon, Inc.*, 935 F.3d 757 (9th Cir. 2019) ........ 26, 27

*Estate of Aguirre v. Cnty. of Riverside*, 29 F.4th 624 (9th Cir. 2022) ........ 6

*Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043 (9th Cir. 2002) ........ 9

*Estelle v. Gamble*, 429 U.S. 97 (1976) ........ 16, 17

*Farmer v. Brennan*, 511 U.S. 825 (1994) ........ 14

*Felkins v. City of Lakewood*, 774 F.3d 647 (10th Cir. 2014) ........ 22

*Fierro v. Smith*, Case No. 19-16786, 2022 WL 2437526 (9th Cir. July 5, 2022) ........ 19

*Fraher v. Mitchell*, 667 Fed. Appx. 628, 2016 WL 3545705 (9th Cir. 2016) ........ 19

*Gee v. Pacheco*, 627 F.3d 1178 (10th Cir. 2010) .................................... 22

*George v. Morris*, 736 F.3d 829 (9th Cir. 2013) ....................................... 4

*Hamby v. Hammond*, 821 F.3d 1085 (9th Cir. 2016) ...................... 18, 19

*Hart v. City of Redwood City*, 99 F.4th 543 (9th Cir. 2024) ..................... 5

*Holmes v. Shah*, 748 Fed. Appx. 72, 2019 WL 193127 (7th Cir. 2019) ................................................................................................ 18

*Hopson v. Alexander*, 71 F.4th 692 (9th Cir. 2023) ................................. 9

*Hunt v. Dental Dep't*, 865 F.2d 198 (9th Cir. 1989) ............................... 26

*In re Air Cargo Shipping Services Antitrust Litig.*, 697 F.3d 154 (2d Cir. 2012) ........................................................................................ 32

*In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010) ................................................................................................ 32

*Jeffers v. Gomez*, 267 F.3d 895 (9th Cir. 2001) ........................................ 5

*Jett v. Penner*, 439 F.3d 1091 (9th Cir. 2006) .......................................... 27

*Johnson v. Jones*, 515 U.S. 304 (1995) ...................................................... 5

*Kayser v. Caspari,* 16 F.3d 280 (8th Cir. 1994) ....................................... 22

*Leer v. Murphy*, 844 F.2d 628 (9th Cir. 1988) ......................................... 21

*Linschoten v. Gedney*, 9 Fed. Appx. 773, 2001 WL 583110 (9th Cir. 2001) ................................................................................................ 23

*Marshall v. Bulanon*, 230 F.3d 1367, 2000 WL 1175653 (9th Cir. 2000) ................................................................................................ 13

*Medical Center at Elizabeth Place, LLC v. Atrium Health Sys.*, 922 F.3d 713 (6th Cir. 2019) ........................................................................ 32

*Parkell v. Danberg*, 833 F.3d 313 (3d Cir. 2016) .................................... 13

*Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014)...................... 11, 12, 20

*Plumhoff v. Rickard*, 572 U.S. 765 (2014) ............................................... 5

*Proctor v. Sood*, 863 F.3d 563 (7th Cir. 2017).......................................... 13

*Reichle v. Howards*, 566 U.S. 658 (2012) ............................................ 7, 8

*Scott v. Harris*, 550 U.S. 372 (2007).......................................................... 5

*Sim v. Duran*, Case No. 19-17291, 2023 WL 141447 (9th Cir. Jan. 10, 2023)........................................................................................... 19

*Simmons v. Monserrate*, 489 Fed. Appx. 404, 2012 WL 4040244 (11th Cir. 2012)................................................................................... 13

*Smith v. Agdeppa*, 81 F.4th 994 (9th Cir. 2023)..................................... 33

*Steele v. Choi*, 82 F.3d 175 (7th Cir. 1996) ............................................. 13

*Stewart v. Aranas*, 32 F.4th 1192 (9th Cir. 2022) ............................ 24, 25

*Toguchi v. Chung*, 391 F.3d 1051 (9th Cir. 2004).................................. 12

*Wilhelm v. Rotman*, 680 F.3d 1113 (9th Cir. 2012)................................ 21

*Wilkinson v. Torres*, 610 F.3d 546 (9th Cir. 2010)................................... 9

*Williams v. City of Sparks*, 112 F.4th 635 (9th Cir. 2024) ....................... 5

*Zorn v. Linton*, 146 S. Ct. 926 (2026)................................... 3, 7, 8, 25, 29

## REGULATIONS

NDOC AR 613.02........................................................................... 20

## RULES

9th Cir. R. 32-1 .......... 34

Fed. R. App. P. 32 .......... 34

Fed. R. Evid. 701 .......... 23

## I. INTRODUCTION

Plaintiff-Appellee James Scott is under the mistaken impression that de novo review in this qualified immunity appeal is a rubber stamp of the district court's factual determination regardless of the actual evidence in the record. De novo review is precisely the opposite of a "rubber stamp," as this Court must independently review ***all*** of the evidence in record, determine which facts are undisputed, construe the disputed material facts in favor of Scott, and determine whether Scott met his burden of proof establishing that each individual Defendant Nurse personally violated clearly established law beyond debate. Under this standard of review, Defendant Nurses Gaylene Fukagawa, Melissa Mitchell, Kellen Prost, Vanessa Timbreza, and Lorenzo Villegas did not treat or examine Scott and therefore they did not delay Scott's medical care in any way, much less actually and personally know that Scott's medical care was delayed in any way, which is required to violate the Eighth Amendment.

Even if Scott told these Defendant Nurses that his fistula had "ceased functioning" on May 2, 2021, as alleged in his complaint, but which Scott expressly refuted in his own declaration opposing summary judgment, the undisputed objective medical records establish that Scott was receiving dialysis through his fistula without interruption or complication between April 9, 2021, through the morning of August 13,

2021. Defendant Nurses therefore could not have known that Scott's fistula had ceased functioning when the objective medical evidence indicated otherwise. To require Defendant Nurses to believe an offender's subjective opinion over the objective medical evidence would make it impossible to provide health care to offenders, and turn the Eighth Amendment's prohibition against cruel and unusual punishment into a mandate that prisons must provide any health care the offender demands.

Not only do the medical records establish that no dialysis appointments were missed, those records also undisputably confirm that within hours of the flow in Scott's fistula decreasing, Scott was transported to an outside medical facility. Due to the quick and decisive action by NDOC medical providers, Scott received a temporary replacement for his fistula within hours, which prevented any delay in dialysis, and Scott's fistula was restored within days. No medical provider has opined that Scott's care was deficient in any way, much less opine that the care provided was medically unacceptable under the circumstances required to establish an Eighth Amendment violation. The decision to provide Scott with additional diagnostic tests or forms of treatment, other than that provided, is a classic example of a matter left to the medical judgment of Scott's medical providers, none of whom were the Defendant Nurses.

These Defendant Nurses, who never examined Scott, had no control over how and when doctors would treat Scott's fistula. These nurses, therefore, lack any personal actual knowledge that Scott's fistula was not functioning, and lacked any ability to alter the treatment provided, which was entirely proper, in any event, and which no medical provider opined was deficient in any way.

Despite the Supreme Court's requirement recently reiterated in *Zorn v. Linton*, 146 S. Ct. 926 (2026), Scott points to no controlling Supreme Court or circuit authority, which Defendant Nurses could have read, establishing that non-examining and non-treating medical personnel must disregard the objective medical evidence in favor of an offender's subjective contrary opinion. Accordingly, Defendants did not violate the Eighth Amendment, much less violate a right clearly established beyond debated, necessary to overcome qualified immunity. This Court should therefore reverse the district court's denial of Defendants' motion for summary judgment because Defendants are shielded by qualified immunity.

## II. ARGUMENT

### A. This Court Has Jurisdiction Over this Appeal of the District Court's Improper Denial of Defendants' Motion for Summary Judgment Asserting Qualified Immunity

Scott quotes *George v. Morris*, 736 F.3d 829 (9th Cir. 2013), out of context, to imply this Court lacks jurisdiction simply because the district court wrongly determined there was a disputed issue of fact. Answering Brief at 3. While this Court in *George* stated "[a]ny decision by the district court 'that the parties' evidence presents genuine issues of material fact is categorically unreviewable on interlocutory appeal," this Court clarified this means "we may not consider questions of evidentiary sufficiency, i.e., which facts a party may, or may not, be able to prove at trial." 736 F.3d at 834. This Court expressly recognized "we do have authority to consider the materiality of a fact," and exercised jurisdiction over the appeal to determine whether officers violated a clearly established right, even though the district court found a "material fact that is genuinely in dispute." *Id.* at 833-34 citing *Behrens v. Pelletier*, 516 U.S. 299, 312-13 (1996).

In *Behrens,* the Supreme Court expressly held the "[d]enial of summary judgment often includes a determination that there are controverted issues of material fact," but that "surely does not mean that every such denial of summary judgment is nonappealable." 516

U.S. at 312-13. As an example, the Supreme Court in *Plumhoff v. Rickard*, 572 U.S. 765, 773 (2014),[1] recognized that, in *Scott v. Harris*, 550 U.S. 372, 380-81 (2007), the Court had no doubts about jurisdiction, even though the plaintiff's version of the facts told "quite a different story," when the court "should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Contrary to Scott's inuendo, the Supreme Court in *Plumhoff* held "deciding legal issues of this sort is a core responsibility of appellate courts."[2] 572 U.S. at 773.

---

[1] Scott's reliance on *Johnson v. Jones*, 515 U.S. 304 (1995) (Answering Brief at 3, 14-15) is unsupportable in light of the Supreme Court's subsequent decisions in *Plumhoff*. *Johnson* never held that this Court lacks jurisdiction to independently review the record to determine whether any material evidence in the record establishes that each defendant personally participated in a constitutional violation. Instead, *Johnson* unremarkably held where material admissible evidence in the record could establish that all five defendant officers had "beaten the inmate," the appellate court lacked jurisdiction to consider a dispute of material fact by three of the officers that they were not present at the time of the alleged beating. 515 U.S. at 307-08, 313-17; *see also Plumhoff*, 572 U.S. at 772-73.

[2] This Court has repeatedly held: "While appellate review does not extend to claims in which the determination of qualified immunity depends on disputed issues of material fact, ***any issue of law*** . . . is a permissible subject for appellate review." *Williams v. City of Sparks*, 112 F.4th 635, 642 (9th Cir. 2024) (emphasis added); *see also Hart v. City of Redwood City*, 99 F.4th 543, 548 (9th Cir. 2024) (same); *Jeffers v. Gomez*, 267 F.3d 895, 904 (9th Cir. 2001) (same).

For that reason, in *Carley v. Aranas*, 103 F.4th 653, 658-59 (9th Cir. 2024), this Court expressly held even when the "district court conclude[s] that there is still a genuine dispute of material fact," this Court has jurisdiction to determine "whether the defendant would be entitled to qualified immunity as a matter of law," after "assuming all factual dispute are resolved, and all reasonable inferences are drawn, in plaintiff's favor." As held by this Court in *Estate of Aguirre v. Cnty. of Riverside*, 29 F.4th 624, 627 (9th Cir. 2022), even if Appellants' "appellate briefing arguably lapsed into disputing plaintiffs' version," this Court still "'undoubtedly' ha[s] jurisdiction to consider the district court's denial of qualified immunity." This Court reasoned Appellants "defense-friendly presentation of the facts does not deprive us of jurisdiction" because this Court "is fully capable of distinguishing between advocacy and the record itself." *Id.*

Accordingly, this Court should independently review the record, determine which facts were undisputed, construe the disputed material facts in favor of Scott, and determine whether Scott met his burden of proof establishing that each individual Defendant Nurse personally violated clearly established law beyond debate. Because Scott failed to do so, this Court should reverse district court's denial of Defendants' motion for summary judgment as Defendants are shielded by qualified immunity as a matter of law.

### B. Scott Admits Defendant Nurses Are Entitled to Qualified Immunity When an Offender Fails to Establish a Violation of a Clearly Established Law, Beyond Debate

Scott admits Defendant Nurses are shielded by qualified immunity when he failed to meet the burden of showing: "(1) that the [Nurses] violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct," as set forth in *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). *See* Answering Brief, at 18. Along with that concession, Scott fails to point to any material facts, established by actual evidence in the record or existing precedent, showing that each Defendant Nurse's own personal and knowing actions violated a right "beyond debate" so that every "reasonable official would have understood that what he is doing violates that right." *Reichle v. Reeds*, 566 U.S. 658, 664-65 (2012).

As recognized by Scott (Answering Brief at 28), in *Zorn*, the Supreme Court recently reaffirmed this exacting standard: "To find that a right is clearly established," required to overcome qualified immunity, courts "need to identify a case where an officer acting under similar circumstances was held to have violated the Constitution." 146 S. Ct. at 930. "The relevant precedent must define the right with a ***high degree of specificity***, so that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.* (emphasis added). Officials "receive qualified immunity unless they could have

'read' the relevant precedent beforehand and 'know[n]' that it proscribed their specific conduct." *Id.* In *Zorn*, the Supreme Court held that "general principles" cannot overcome Defendants entitlement to qualified immunity because such "general principles" do not "obviously resolve" and fail to "specify which circumstances" establish a constitutional violation. *Id.* at 931.

Contrary to *Zorn*'s mandate, Scott fails to point to any binding Supreme Court or circuit precedent which established, under the specific facts of this case, that each Defendant Nurse personally violated the Eighth Amendment. Of course, Scott's failure is unsurprising as no such case exists. Thus, Scott merely string cites general principles, without looking at the underlying factual circumstances of each case. Such an approach does not establish an Eighth Amendment violation "in a 'particularized' sense so that the 'contours' of the right are clear to a reasonable official." *Reichle*, 566 U.S. at 665. Accordingly, Scott cannot show a violation of a right, much less a clearly established right required to overcome qualified immunity.

### C. Scott Ignores the Undisputed Facts of this Case which Establish that the Defendant Nurses Did ***NOT*** Violate the Eighth Amendment

Scott completely ignores the actual undisputed evidence in the record. Instead, Scott entirely and improperly relies on the "district

court's description of the facts" when setting forth the supposed undisputed facts. Answering Brief at 3-4 n.1. In *Crawford-El v. Britton*, 523 U.S. 574, 589-92 (1998), the Supreme Court held to overcome qualified immunity, the plaintiff must "identify affirmative evidence from which a jury could find the plaintiff has carried his or her burden of proving" a "violat[ion of] clearly established law, which is an 'essentially legal question.'" As held in *Estate of Aguirre,* this Court "review[s] de novo the district court's denial of qualified immunity" and therefore this Court must review "the record itself." 29 F.4th at 627.

In *Wilkinson v. Torres*, 610 F.3d 546, 550 (9th Cir. 2010), this Court held a "review [of] a denial of qualified immunity [is] de novo," and therefore "when the facts, as alleged by the non-moving party, are unsupported by the record such that no reasonable jury could believe them, [this Court] need not rely on those facts for purposes of ruling on the summary judgment motion" asserting qualified immunity. In *Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1048 (9th Cir. 2002), this Court held it has jurisdiction to "decide whether there is a material dispute about the correctional officers' conduct," even though the district court "concluded that genuine issues of material fact exist[ed]." Also, in *Hopson v. Alexander*, 71 F.4th 692, 697 (9th Cir. 2023), this Court held it "decide[s] de novo whether the facts, considered in the light most favorable to the plaintiff, show that qualified immunity is

warranted" and therefore has jurisdiction to "consider facts offered by the defendant that are uncontradicted by any evidence in the record."

By relying on the district court's descriptions of the facts, rather than actual evidence in the record, Scott ignores his own evidence and the undisputed evidence found in the medical records establishing that the Defendant Nurses did not violate the Eighth Amendment. When all of the undisputed facts are examined, Defendant Nurses did not violate the Eighth Amendment, much less violate a clearly established right, beyond debate.

In his Answering Brief, Scott points to absolutely no evidence in the record that Defendant Nurses ever examined or treated Scott, and therefore they could not have known that Scott suffered from any medical need. In his Answering Brief at 4-5, Scott cites to ER-3-4, the district court order (ECF No. 51 at 2-3), which in turns relies on pages 22-23 of Scott's complaint to establish that the Defendant Nurses Fukagawa, Mitchell, Prost, Timbreza and Villegas knew that Scott's fistula had clotted on May 1st or 2nd, 2021. These pages of Scott's complaint, however, are almost entirely devoted to staff who are not defendants in this action. 2-ER-273-74. The only mention of the Defendant Nurses in Scott's complaint is on 2-ER-274, ECF No. 6 at 23:8-13: "The following day [May 2, 2021], the Plaintiff then notified the already aware Defendants Melissa Mitchell, Gaylene Fukagawa,

Vanessa [Timbreza], Kellen [Prost] . . . [and] Lorenzo Villegas . . . that his AV fistula had ceased functioning. . . ." First, despite this factual allegation in the Complaint, Scott has clearly and undisputed disavowed and withdrawn that allegation, as he affirmed in his declaration opposing summary judgment that: "On August 13, 2021, at approximately 4:00 p.m. during chow time, I ***first*** noticed that my arteriovenous (AV) fistula was clotting." 2-ER-53 (emphasis added); *see also* 2-ER-222 (Scott's grievance affirming the same August 13th date). This under oath statement makes it clear that Scott himself did not first notice the fistula clotting issue until August 13, 2021.

Moreover, even if this Court could ignore Scott's own declaration, and accept that Scott told Defendant Nurses on May 2, 2021, that "his AV fistula had ceased functioning," the Defendant Nurses could not have known that Scott's fistula was not working until the evening of August 13, 2021, because they had not examined Scott and a review of the medical records establishes that Scott's fistula was working properly from April 9, 2021, through the morning of August 13, 2021, as Scott was undisputably receiving his dialysis without complications. Sealed 3-ER-310-12, 319, 323.

Scott simply ignores *Peralta v. Dillard*, 744 F.3d 1076, 1087 (9th Cir. 2014), where this Court held, *en banc*, that inmate complaints alleging a serious medical need could not provide the awareness

required to establish deliberate indifference because such "complaints often allege numerous violations, many of which turn out not be supported by the evidence." In *Peralta*, this Court expressly held an inmate "hasn't shown that a [non-treating medical provider] should have been aware of any risk to [the inmate's] health, let alone that [non-treating medical provider] actually was aware" when the non-treating medical provider "wouldn't have been able to tell whether [the inmate] had a serious medical need" from the medical records. *Id.* at 1086.

As Defendant Nurses did not treat or examine Scott and the medical records reveal that Scott's fistula was working properly from April 9, 2021, through the morning of August 13, 2021, which necessarily included May 2, 2021, Defendant Nurses could not have actually known that Scott suffered from any serious medical need based on any unsupported subjective opinion to the contrary. Accordingly, it is undisputed that Defendant Nurses lacked the requisite subjective actual knowledge to establish deliberate inference. *See Toguchi v. Chung*, 391 F.3d 1051, 1058-60 (9th Cir. 2004) (holding the doctor's "conduct [could ]not constitute deliberate indifference" because the doctor was not "subjectively aware that her failure to conduct a differential diagnosis created a 'substantial risk of serious harm"); *Marshall v. Bulanon*, 230 F.3d 1367, 2000 WL 1175653, at *1 (9th Cir.

2000) (holding that doctor's care "did not amount to deliberate indifference to his serious medical needs, especially where a subsequent x-ray revealed no abnormalities"); *see also Proctor v. Sood*, 863 F.3d 563, 567–68 (7th Cir. 2017) (holding that medical providers were not deliberately indifferent to inmate's medical condition when tests "were consistently normal"); *Parkell v. Danberg*, 833 F.3d 313, 338 (3d Cir. 2016) (holding that "in light of the normal x-ray results, a factfinder could not reasonably conclude that [a nurse] deliberately ignored risks to [inmate's] health"); *Steele v. Choi*, 82 F.3d 175, 177-79 (7th Cir. 1996) (holding that doctor was not "deliberately indifferent to [prisoner's] medical needs" when the doctor was not "aware of the risks that [the prisoner] faced," despite the prisoner "experiencing among other symptoms projectile vomiting and a severe headache," which should have caused a "competent doctor" to order further tests); *Simmons v. Monserrate*, 489 Fed. Appx. 404, 406, 2012 WL 4040244 (11th Cir. 2012) (holding that prison officials were not deliberately indifferent when they lacked "any subjective knowledge of a risk of harm attributable to the brain mass" because "the medical reports have suggested the opposite").

### 1. Even if Defendant Nurses Had Become Aware that Scott's Fistula Was Not Functioning, these Nurses Did Not Delay Scott's Care

Even if these Defendant Nurses had examined Scott (they didn't) and had become aware that Scott's fistula was not functioning (they

didn't), Scott's care was not delayed, much less delayed by these Defendant non-treating Nurses. Instead, Scott was promptly and properly treated.

The undisputed evidence, ignored entirely by Scott, establishes that medical providers responded promptly once there was actual objective medical evidence that flow in his fistula had decreased. In *Farmer v. Brennan*, 511 U.S. 825, 844 (1994), the Supreme Court held that prison officials "may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Scott simply overlooks all of the undisputed evidence in the record establishing that Scott's care was not delayed.

Scott undisputably received dialysis through his fistula on the morning of August 13, 2021, without complication. Sealed 3-ER-319, 323. When an examination revealed at 7:00 p.m., that same day, that blood flow in his fistula had significantly decreased, medical providers undisputably ordered that Scott's condition be monitored. Sealed 3-ER-319. The next day, at 10:00 a.m., Scott was examined by a non-party dialysis nurse, who recommended that Scott be transported to the emergency department for further evaluation because the thrill in Scott's fistula had significantly decreased. Sealed 3-ER-319, 323. NDOC treating medical providers did so almost immediately, as Scott was not only transported to the emergency department of the Carson-

Tahoe Medical Center for further evaluation, but admitted into the hospital no later than 11:30 a.m. Sealed 3-ER-323, 326-327.

The sonogram ordered by Dr. Landrita was the first objective medical evidence that Scott's fistula was without flow. Sealed 3-ER-326-27. Rather than the Defendant Nurses, Dr. Landrita, upon consultation with Dr. Quigly, a nephrologist, is the one who ordered that a tunnel catheter be placed in Scott's left anterior chest, as a replacement for Scott's fistula, rather than an immediate thrombectomy. Sealed 3-ER-326-28. Due to NDOC medical providers quick and decisive action, Scott was able to continue the scheduled dialysis on Monday, August 16, 2021. Sealed 3-ER-327. This undisputedly establishes deliberate and decisive medical care, – not deliberate indifference.

Moreover, on August 16, 2021, Dr. Naughton, an NDOC doctor who is not a defendant, requested approval for Scott to be evaluated for a possible thrombectomy to repair the fistula. Not only was this request approved *the very next day* (Sealed 3-ER-321), Scott was also examined by Dr. Kevin Harlow, a surgeon that day as well. Dr. Harlow opined that the thrombosis of the fistula was "due to vascular prosthetic devices, implants, and grafts," not due to any action by Defendants Nurses. Sealed 3-ER-308. Even though Dr. Harlow did not believe the fistula was salvageable, Dr. Harlow recommended a "right upper

extremity fistula thrombectomy" to attempt to repair the fistula. Sealed 3-ER-308. On September 16, 2021, Dr. Harlow performed the thrombectomy, which he classified as "elective" surgery. Sealed 3-ER-303. The surgery was successful as "the fistula was open and there was no evidence of stenosis" (narrowing of the fistula). Sealed 3-ER-304. If for some reason the fistula failed again, Dr. Harlow still had the option of "a proximal AV fistula by connecting the brachial artery to the antecubital vein." Sealed ER-304.

Neither the district court, nor Scott, point to any evidence in the record which would establish that the thrombectomy could have been performed any sooner or that Scott would have received a more favorable result, much less that Defendant Nurses were the cause of any delay in Scott receiving a thrombectomy. To the contrary, Dr. Harlow determined that the surgery was successful—and more importantly for purpose of this case confirmed that nothing Defendant Nurses did or did not do caused the issue, as it was caused by "vascular prosthetic devices, implants, and grafts." Sealed 3-ER-304, 308.

A comparison of the undisputed facts here with those in *Estelle v. Gamble*, 429 U.S. 97 (1976) shows how far short Scott's claim falls. In *Estelle*, the prisoner alleged that he continued to suffer from debilitating back pain after a bale of cotton fell on him. *Id.* at 99–100. When he sought medical treatment, the medical staff gave him only

pain medication and muscle relaxers; they did not even order an X-Ray or other similar diagnostic test to determine what was wrong. *Id.* The Supreme Court held that these allegations failed to state a claim because "the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment." *Id.* at 107.

Here, by contrast, NDOC medical providers quickly responded to evidence that Scott's fistula was not properly functioning. In less than 17 hours after a decrease in flow was noted in Scott's fistula, Scott was examined by Medical Center doctors. Even though Medical Center doctors did not recommend a thrombectomy to repair the fistula, NDOC doctors immediately requested approval for Scott to be evaluated for a possible thrombectomy to repair the fistula, which was approved the next day. Sealed 3-ER-321. Due to NDOC doctors' action, the surgeon performed a successful thrombectomy. Sealed 3-ER-303-04. Just like in *Estelle*, however, the decision to provide Scott with "additional diagnostic tests or forms of treatment," other than the treatment provided, "is a classic example of a matter for [Scott's doctors'] medical judgment" as a result of those doctors' medical examination. *Id.* at 107.

At best, Scott offers his unsupported difference of opinion that he should have received an immediate thrombectomy, which is insufficient to establish an Eighth Amendment violation. In *Hamby v. Hammond*,

821 F.3d 1085, 1092 (9th Cir. 2016), this Court expressly held: "Eighth Amendment doctrine makes clear that a difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." Scott, who is not a doctor, only offers his own unsupported lay opinion that Defendant Nurses, who never examined or treated Scott, should have arranged for an immediate thrombectomy, even though no doctor opined that thrombectomy was required, but instead considered the thrombectomy to be elective surgery. As a matter of law, Scott's unsupported lay opinion cannot establish an Eighth Amendment violation, especially without any disagreement by any medical provider that Scott may not have been provided proper care. *See Holmes v. Shah*, 748 Fed. Appx. 72, 74, 2019 WL 193127 (7th Cir. 2019) (holding that while an inmate "may have wanted more treatment than pain killers and an x-ray, his mere disagreement with the course of adequate treatment is not enough to create a triable claim of deliberate indifference").

To prove an Eighth Amendment violation, Scott must put forth evidence establishing that the course of treatment personally chosen by each Defendant Nurse "was medically unacceptable under the circumstances ***and*** that the defendants chose this course in conscious disregard of an excessive risk to the plaintiff's health." *Hamby*, 821

F.3d at 1092 (emphasis added). This undisputedly cannot be shown here.

Scott has put forth no evidence that any Defendant Nurse had any involvement in choosing a course of treatment at all, much less that they disregarded any risk to Scott's health. Instead, Scott's medical providers properly chose a course of treatment based on their considered medical judgment. No medical provider has opined that the extensive course of treatment provided to Scott was deficient in any respect. And no medical provider has opined that the original fistula failure was caused by any action or inaction of Defendant Nurses. Without such evidence, Scott cannot establish an Eighth Amendment violation. *See Sim v. Duran*, Case No. 19-17291, 2023 WL 141447, at *2 (9th Cir. Jan. 10, 2023) (holding a "difference of opinion . . . between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference" when the medical opinions provided in briefing do not meet the "high bar" of establishing the "chosen course of treatment was medically unacceptable under the circumstances"); *Fierro v. Smith*, Case No. 19-16786, 2022 WL 2437526, at *2 (9th Cir. July 5, 2022) (same); *Fraher v. Mitchell*, 667 Fed. Appx. 628, 630, 2016 WL 3545705 (9th Cir. 2016) (same).

Accordingly, Scott's Eighth Amendment claim has no merit, and the district court erred when refusing to grant Defendants' motion for

summary judgment because they did not violate the Eighth Amendment.

### 2. Defendant Nurses Did ***NOT*** Violate the Eighth Amendment Because They Had No Control Over Scott Receiving a Thrombectomy

Even if some medical provider had opined that the thrombectomy had been unreasonably delayed (no one did), Defendant Nurses did not violate the Eighth Amendment because Scott points to no evidence in the record establishing that they had any control over Scott receiving a thrombectomy. In *Peralta*, this Court held that prison officials could not be held liable for constitutional violations when they had "no control" over the requested resources and therefore the relief requested was "impossible to provide." 744 F.3d at 1083-84, 1086-88. This Court concluded that a court cannot impute wrongdoing "to an employee who himself has committed no wrong." *Id.* at 1084.

Scott does not point to any evidence that the Defendant Nurses had any ability to control Scott receiving a thrombectomy. Instead, decisions on how to treat Scott were made by Dr. Landrita and Dr. Quigly initially, neither of whom recommended a thrombectomy. Dr. Naughton, an NDOC doctor, was the first doctor to recommend a thrombectomy. Scott ignores, pursuant to NDOC AR 613.02(2), only a "physician" could request "[o]ut-of-institution diagnostic and therapeutic services." Moreover, Scott does not point to any evidence in

the record establishing that Defendant Nurses had any control over when or if Dr. Harlow, the surgeon, performed the thrombectomy. Without any ability to control Scott receiving a thrombectomy, Defendant Nurses could not violate the Eighth Amendment based on any supposed delay in providing the thrombectomy because Defendant Nurses committed no wrong.

#### 3. Scott Cannot Establish an Eighth Amendment Violation Because He Lacks Objective Medical Evidence Establishing Causation and Harm

Scott cannot establish an Eighth Amendment violation because he fails to point to any objective medical evidence establishing harm because of any supposed delay in receiving a thrombectomy. As mandated by *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988), Scott must establish the "requisite causal connection between each individual prison official's actions and the eighth amendment violation." The district court erred when denying Defendant Nurses' motion for summary judgment because Scott offered no evidence demonstrating that any delay caused harm, much less that any Defendant Nurse caused any delay or any harm. *Id.*

In *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012), this Court held that to prove an Eighth Amendment violation, the inmate must establish Defendants' actions "caused" further harm. *See also Shapley,* 766 F.2d at 407 (holding that inmate could not establish a

"claim of deliberate medical indifference" unless "the denial [of medical care] was harmful").

Here, Scott fails to point to any objective medical evidence in the record establishing that the actions of the Defendant Nurses were the actual and proximate cause of any harm to Scott. In *Kayser v. Caspari,* 16 F.3d 280, 281 (8th Cir. 1994), the Eighth Circuit held that a prisoner's "bare assertions" could not establish that a prisoner suffered from an ailment when there was no "medical evidence to support' the prisoner's claim that he suffered from this ailment." The court reasoned that the prisoner's "self-diagnosis alone cannot establish that he does, in fact, suffer from [an aliment]" when "the available medical evidence does not support his self-diagnosis." *Id.*; *see also Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010) (same). How much more so in this case, where Scott has explicitly disavowed under oath the "bare assertion" that Defendant Nurses somehow knew in May of 2021, as opposed to August 13, 2021, that there were any issues with the fistula. Moreover, on August 13, 2021, the actual treating medical providers took immediate and decisive action to monitor him, which within hours ensured he was transferred and admitted into a hospital after a doctor examination.

As explained by the Tenth Circuit in *Felkins v. City of Lakewood*, 774 F.3d 647, 651 (10th Cir. 2014), a plaintiff's "lay evidence"

concerning her medical condition "is inadmissible in court and thus cannot be used to oppose summary judgment" when the plaintiff "does not claim to be a medical expert." The court reasoned that "[s]uch lay evidence . . . cannot be 'based on scientific, technical, or other specialized knowledge'," as required by Fed. R. Evid. 701, and therefore is inadmissible for purposes of summary judgment. *Id.*

Scott cannot fault the Defendant Nurses for any supposed delay over which they had no control, and which did not cause any harm. Dr. Harlow, Scott's surgeon, pronounced the thrombectomy a success and Scott offers no contrary medical evidence. Dr. Harlow also opines without any evidence to the contrary that the need for the thrombectomy was not due to anything Defendants Nurses did or did not do in providing nursing care. Without harm caused by Defendant Nurses, Scott cannot establish that any Defendant Nurse violated the Eighth Amendment with respect to Scott's medical care. *See Linschoten v. Gedney*, 9 Fed. Appx. 773, 774, 2001 WL 583110, at *1 (9th Cir. 2001) (holding that the "district court properly granted [prison officials'] motion for summary judgment because the inmate "provided no evidence . . . that the delay in receiving medical treatment caused him harm").

### C. Scott Failed to Meet His Burden of Establishing, Beyond Debate, a Violation of Clearly Established Law

Neither Scott, nor the district court, has cited any Supreme Court or circuit authority which squarely governs the specific facts of this case and would, beyond debate, clearly establish a violation of the Eighth Amendment. Cases relied upon by the district court do not come close to the factual circumstances in this case and therefore do not establish a violation of clearly established law, beyond debate.

For example, in *Stewart v. Aranas*, 32 F.4th 1192, 1194-95 (9th Cir. 2022), prison officials "persist[ed] in a treatment known to be ineffective" "over a period of years and a visibly deteriorating condition." This Court recognized that "[m]ere disagreement with a medical treatment plan is not deliberate indifference," but held "continuation of the same treatment in the face of obvious failure is." *Id.* at 1194. Neither Scott, nor the district court, point to any failure in treatment, much less failure over a period of years.

Instead, the undisputed evidence establishes that Scott had no need of treatment until the evening of August 13, 2021, because his fistula was working properly as he was receiving dialysis thorough his fistula from before April 9, 2021, until the morning of August 13, 2021, without complications. Sealed 3-ER-307, 310-312, 319, 323, 327. When an examination revealed at 7:00 p.m. that same day that blood flow in

his fistula had significantly decreased, medical providers ordered that Scott's condition be monitored. Sealed 3-ER-319. Less than 17 hours after a loss of thrill was noted in Scott's fistula, Scott was examined by Medical Center doctors. Sealed 3-ER-319, 323, 326-27. Rather than Defendant Nurses, Dr. Landrita, upon consultation with Dr. Quigly, a nephrologist, is the one who ordered that a tunnel catheter be placed in Scott's left anterior chest, as a replacement for Scott's fistula, rather than an immediate thrombectomy. Sealed 3-ER-326-28. Due to NDOC medical providers' quick and decisive action, Scott was able to continue the scheduled dialysis on Monday, August 16, 2021. Sealed 3-ER-327.

Rather than a continuation of the same treatment for years in the face of obvious failure, as found in *Stewart*, Scott received successful treatment within hours which prevented any delay in dialysis, and ultimately restored Scott's fistula. Contrary to the considered medical opinion of all of Scott's medical providers, Scott offers a mere difference of opinion as to the care Scott should have received which this Court in *Stewart* declared could not establish an Eighth Amendment violation.[3]

---

[3] To the extent *Stewart* may be viewed as relying on the general principle that delay can violate the Constitution as the sole basis for establishing a clearly established violation beyond debate, that view cannot survive in light of *Zorn*'s requirement that courts "need to identify a case where an officer acting under similar circumstances was held to have violated the Constitution." 146 S. Ct. at 930.

In *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989), this Court reversed the district court's grant of summary judgment because prison officials were aware of an urgent "dental" need but "failed to take any action." Here, Defendant Nurses could not have been aware of any urgent medical need because Scott's fistula was working, without complications, until the evening of August 13, 2021. Rather than take no action at all, as in *Hunt*, when decreased flow was in Scott's fistula was suspected, Scott received lifesaving care within hours, which prevented any delay in dialysis, and which care continued without delay to restore Scott's fistula.

*Edmo v. Corizon, Inc.*, 935 F.3d 757, 791-92 (9th Cir. 2019) does not involve a delay in care, but an outright refusal to provide gender confirmation surgery to treat gender dysphoria, despite "well-qualified" experts opinion that the failure to provide surgery was "medically unacceptable." The general principal in *Edmo*, that the "provision of some medical treatment, even extensive treatment over a period of years, does not immunize officials from the Eighth Amendment's requirements" does not overcome Defendants entitlement qualified immunity because it does not consider when extensive treatment violates the Eighth Amendment, much less "obviously resolve" whether the care of Defendant Nurses, who had no involvement in Scott's medical care, was somehow medically unacceptable. As no medical

provider has opined that the care Scott received was deficient in any respect, Scott's speculative opinion that his care was deficient cannot establish an Eighth Amendment violation under *Edmo*. 935 F.3d at 786.

In *Jett v. Penner*, 439 F.3d 1091, 1096-98 (9th Cir. 2006), this Court found an Eighth Amendment violation when the treating medical provider refused to "request an orthopedic consultation," merely because the prisoner could not go to the hospital for the consult, but the orthopedic consult was available at a contracted facility. Here, the Defendants Nurses had no involvement in Scott's care and the medical records establish that his fistula was working properly when Scott supposedly told the Defendant Nurses of an interruption in flow. Defendant Nurses simply had no reason to intervene as long as Scott was receiving dialysis through his fistula, especially when they were not treating or examining Scott.

In *Colwell v. Bannister*, 763 F.3d 1060, 1069 (9th Cir. 2014), this Court found an Eighth Amendment violation when the doctor "ignored the recommendations of treating specialists" and the "record support[ed] a conclusion that the specialists' recommendations for surgery were overridden not because of conflicting medical opinions about the proper course of treatment, but because officials enforced [an administrative] policy," enacted without concern for "medical opinions

about the proper course of treatment." Here, Defendant Nurses did not ignore any recommendations. Instead, Defendant Nurses properly relied on the medical records establishing Scott's fistula was working properly. When a decrease flow was actually detected, Scott received prompt treatment from experts who could restore Scott's fistula, none of whom opined that Scott's treatment was deficient in any respect.

In *Carley*, this Court expressly rejected the district court's suggestion that the law is clearly established that "prison doctors are deliberately indifferent when[ever] they fail to provide or delay providing necessary medical treatment" because "this defines the right too broadly in light of our precedents that require us to "look at the law 'in light of the specific context of the case, not as a broad general proposition.'" 103 F.4th at 661. The Court held the "appropriate inquiry is not whether evolving medical standards prescribed a course of best treatment and practice, but whether the medical standard was so well established that the failure to prescribe the course of treatment could only be considered deliberate indifference within the meaning of the Eighth Amendment." *Id.*

Just as in *Carley,* Scott fails to cite any "precedent from the Supreme Court, our court, or 'a robust consensus of cases of persuasive authority,'" which would establish that the care Scott received was inadequate in any respect, much less establish that the care was

medically unacceptable under the circumstances of this case. As held in *Carely*, Scott's claim fails because "modest care, even where a complete cure may be available, often meets the minimally adequate medical care standard that the Eighth Amendment imposes." *Id.* Here, Scott received much more than modest care, and therefore the care Scott received far exceeded Eighth Amendment standards. He received lifesaving care which prevented any delay in dialysis, which continued without delay to restore Scott's fistula.

*Zorn* forecloses any argument that Defendant Nurses are not shielded by qualified immunity. In *Zorn*, the Supreme Court rejected the conclusion that circuit authority, which established the general principle 'that the gratuitous use of pain compliance techniques—such as a rear-wristlock—on a protestor who is passively resisting arrest constitutes excessive force,'" could overcome qualified immunity because it did not "obviously resolve whether using a rear wristlock to move a noncompliant protester after repeated warnings violates the Fourth Amendment, . . . as it fails to specify which circumstances make the use of force 'gratuitous.'" 146 S. Ct. at 931.

This Court should similarly reject the argument that circuit authority which establishes the general principal that delay in providing medical care, under specific circumstances which are not present in this case, can overcome Defendant Nurses' entitlement to

qualified immunity because cases relied upon by the district court fails to specify which circumstances would show delay in this case, much less show that any delay was unreasonable in this case. No court has held that prison nurses, who never examined or treated the offender, violate the Eighth Amendment when the objective medical evidence shows that the offender is receiving proper care and the nurses had no control over referring a prisoner to outside medical care, especially when the offender was provided outside care within hours of suspecting a decrease flow in a fistula, which prevented any delay in dialysis, and which care continued without delay to restore Scott's fistula. Scott therefore cannot establish a constitutional violation, much less meet his burden of showing a violation that was clearly established, beyond debate. *See Carley*, 103 F.4th at 659-60 (holding the "burden of proof rests" with the [inmate] to prove a both that "the officials conduct violated a constitutional right," and that the "violation was clearly established at the time of the violation"). Accordingly, Defendant Nurses are shielded by qualified immunity, and the district court erred when denying Defendants' motion for summary judgment. This Court should therefore reverse the district court's judgment and order the district court to grant Defendants' motion for summary judgment because they are shielded by qualified immunity.

### D. Despite Scott's Insinuations, Defendant Nurses Did ***NOT*** Waive Any Arguments on Appeal

Scott repeatedly and wrongly insinuates that Defendant Nurses waived arguments on appeal, which according to Scott were not raised before the district court. In *Allen v. Santa Clara Cnty. Corr. Peace Officers Ass'n*, 38 F.4th 68, 71 (9th Cir. 2022), this Court held when an Appellant's argument "is not a new claim but is, instead, a new argument in support of their consistent claim" then "Appellants can make any argument in support of their claim on appeal" because "they are "not limited to the precise arguments they made below." "As the Supreme Court has made clear, its claims that are deemed waived or forfeited, not arguments." *Id.*; *see also Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 330 (2010) (same).

Defendant Nurses' argument that Scott failed to establish all the elements necessary to prove that Defendant Nurses violated the Eighth Amendment is not a new claim. In their motion for summary judgment Defendant Nurses set forth all of the required elements necessary to establish an Eighth Amendment claims and concluded a "review of this record cannot support any finding that there was a delay, nor any purposeful act or inaction by any of the named Defendants." 2-ER-68-70. Even if Defendant Nurses had made new argument concerning deliberate indifference, personal participation or control those arguments would not be waived or forfeited as only claims are deemed

waived or forfeited, and not arguments. Defendant Nurses' consistent, albeit more precise, argument establishing that Defendant Nurses lacked any the required personal knowledge, participation and control, therefore have not been waived or forfeited.[4]

Even if the waiver or forfeiture rule were applicable, in *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010), this Court explained "waiver is a discretionary, not jurisdictional, determination." The Court held such discretion will be exercised "when the issue presented is purely one of law and either does not depend on the factual record developed below, or the pertinent record has been fully developed." *Id.* Because this is an appeal of a motion for summary judgment, no additional factual record need be developed and the issues

---

[4] *See Medical Center at Elizabeth Place, LLC v. Atrium Health Sys.*, 922 F.3d 713, 729 n.10 (6th Cir. 2019) (holding defendants did not waive or forfeit new argument that plaintiff failed to establish claim because parties "are not limited to the precise arguments they made below"); *Bartley v. Kim's Enter. of Orlando, Inc.*, Case No. 13–13507, 568 Fed. Appx. 827, 836 n.6 (11th Cir. 2014) (holding defendant did not waive precise argument "detain the plaintiffs to ensure officer and public safety" because defendant made "the broader claim that the challenged detention was lawful" as "parties are not limited to the precise arguments they made below"); *In re Air Cargo Shipping Services Antitrust Litig.*, 697 F.3d 154, 161 n.3 (2d Cir. 2012) (holding argument which is "additional support for Defendants' position" should not be disregarded on appeal because "[o]nce a federal claim is properly presented, a party can make any argument in support of that claim" as "parties are not limited to the precise arguments they made below").

to be decided are purely ones of law. As Defendant Nurses are entitled to qualified immunity as a matter of law (*Smith v. Agdeppa*, 81 F.4th 994, 1001 (9th Cir. 2023), to the extent forfeiture or waiver is implicated, this Court should exercise its discretion to reject any argument concerning forfeiture.

## III. CONCLUSION

For the foregoing reasons, this Court should reverse the district court's judgment denying Defendants' motion for summary judgment, and remand with instruction grant the motion because Defendants are entitled to qualified immunity.

Respectfully submitted September 28, 2026,

AARON D. FORD
Attorney General

By: *_/s/ Chris Davis_*
Chris Davis (Bar No. 6616)
Senior Deputy Attorney General

*Attorneys for the Defendants-Appellants*

## STATEMENT OF RELATED CASES

The undersigned attorney asserts that I am unaware of any related cases pending in the Ninth Circuit Court of Appeals.

## CERTIFICATE OF COMPLIANCE

I certify that pursuant to Fed. R. App. P. 32(a)(7)(C) and 9th Cir. R. 32-1, the attached opening brief is proportionately spaced, has a typeface of 14 points or more and contains 6912 words.

Respectfully submitted September 28, 2026,

AARON D. FORD
Attorney General

By: /s/ *Chris Davis*
Chris Davis (Bar No. 6616)
Senior Deputy Attorney General

*Attorneys for the Defendants-Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **DEFENDANTS-APPELLANTS' REPLY BRIEF** with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate electronic system on September 28, 2026.

Participants in the case who are registered users will be served by the appellate electronic filing system, or by email as follows:

Samuel Weiss, Esq.
RIGHTS BEHIND BARS
416 Florida Avenue, NW, No. 26152
Washington, DC 2000
sam@rightsbehindbars.org

*Counsel for Plaintiff-Appellee*

/s/ *Kimalee Goldstein*
An employee of the Office of the
Nevada Attorney General